USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/16/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GEOFFREY OSBERG, on behalf of himself
and on behalf of all others similarly
situated,

                        Plaintiffs,

- against -


FOOT LOCKER, INC. and FOOT LOCKER
RETIREMENT PLAN,

                    Defendants.
------------------------------------X

07 Civ. 1358 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

     Plaintiff Geoffrey Osberg ("Plaintiff" or "Osberg") brings a four-count class action Complaint against his former employer, Foot Locker, Inc. ("Foot Locker") and Foot Locker Retirement Plan (the "Plan") (collectively, "Defendants"), challenging Defendants' January 1, 1996 conversion of the Foot Locker Retirement Plan to a cash balance plan.  Plaintiff alleges that the amendment of the Plan contravened and contravenes various provisions of the federal Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq.  Count One of the Complaint alleges that the terms of the amended Plan violated and violate ERISA § 204(b)(1)(H), 29 U.S.C. § 1054(b)(1)(H) because an older employee's benefit accrual was and/or remains ceased or the rate of benefit accrual was and/or remains reduced for a longer period than for a similarly-situated

younger employee.  Count Two alleges that Defendants failed to provide Plaintiff and other plan participants with sufficient notice of the amendment and the significant reduction in the rate of future benefit accrual it effected, as Plaintiff alleges is required under ERISA § 204(h), 29 U.S.C. § 1054(h).  Count Three challenges the summary plan description ("SPD") distributed by Defendants to Plaintiff and other participants after the date of conversion.  Specifically, Plaintiff alleges that Defendants failed to explain the "full import" of the cash balance plan terms, including its wear-away effect and reduction of benefits, in violation of the minimum requirements for SPDs set forth in ERISA § 102, 29 U.S.C. § 1022.  In Count Four, Plaintiff alleges that Defendants breached their fiduciary duties under ERISA § 404(a) by intentionally, recklessly or negligently making materially false and misleading statements and omissions in their communications to Plaintiff and other Plan participants, by fraudulently concealing or attempting to conceal their violations of ERISA described in the above Counts, and by failing to disclose that the 1995 amendment and the terms of the amended Plan resulted in wear-away of participants' benefits and otherwise caused a significant reduction in the rate of participants' future benefit accrual.  Plaintiff seeks injunctive relief in the form of enjoinment and reformation of the Plan, a

recalculation of benefit amounts due or past due under the terms
of the Plan in accordance with the requirements of ERISA, and
payment of the difference in benefits, plus interest, to
Plaintiff and members of the proposed Class who received less in
benefits or benefit accruals than the amount to which they were
and are entitled.

Defendants move to dismiss each Count of the Complaint
pursuant to Fed. R. Civ. P. 12(b)(1), for lack of standing and on
statute of limitations grounds, and 12(b)(6), for failure to
state a claim upon which relief can be granted.  For the reasons
set forth below, Defendants' Motion to Dismiss is GRANTED in part
and DENIED in part.

I. BACKGROUND

The following facts alleged in the Complaint in 07 Civ. 1358
(DAB) are assumed to be true for purposes of this Motion to
Dismiss.[1]

---

[1] The Court declines to convert Defendants' Motion to Dismiss into
a Motion for Summary Judgment, as Plaintiff has suggested.  The
Court finds that the January 1, 1996 Plan, the November 17, 1995
Highlights Memorandum, and the September 30, 1996 Summary Plan
Description attached by Defendants to their Motion, (Declaration
of Nicole A. Eichberger, ("Eichberger Decl.") Exs. A & B) are
incorporated by reference in the Complaint, and are therefore
appropriate for consideration on this Motion to Dismiss.  See Yak
v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) ("On a
motion to dismiss, the court may consider "any written instrument

Plaintiff Geoffrey T. Osberg ("Plaintiff" or "Osberg") was employed by Defendant Foot Locker, Inc. or one of its predecessors or subsidiaries or affiliates[2] ("Foot Locker") for approximately 20 years, from 1982 to 2002. (Compl. ¶ 5.) During his period of employment with Foot Locker, Plaintiff participated in the Foot Locker Retirement Plan (the "Plan"), an employee pension benefit plan, which Plaintiff has also named as a Defendant in this action. (Id. ¶¶ 6-7.) Plaintiff brings this suit on behalf of himself and on behalf of a proposed Class of "[a]ll persons who were participants in the Foot Locker Retirement Plan (the "Plan") as of December 31, 1995 and on or

---

attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.") Plaintiff has, in alleging violations of ERISA § 204(h) in paragraphs 45 through 47 of his Complaint, made repeated reference to "[a]ny written notice that was provided to Plaintiff or other participants" in alleging, for example, that such notice "did not set forth the plan amendment, did not set forth its effective date, was not provided after the adoption of the amendment and/or was not provided not less than 15 days before the amendment's purportedly effective date," in violation of § 204(h). (Compl. ¶ 45.) The November 17, 1995 Highlights Memorandum included by Defendants at Exhibit C to the Eichberger Declaration is therefore integral to and incorporated by the allegations of the Complaint, and appropriate for consideration by the Court, as is the September 15, 1995 letter referenced in the Highlights Memorandum and attached by Plaintiff to its Opposition to Defendants' Motion. (Declaration of Eli Gottesdiener at Ex. 1.)

[2] Prior to November 2001, Foot Locker was known as Venator Group, Inc. and prior to June 1998, Woolworth Corporation. (Compl. ¶ 6)

after January 1, 1996; and the beneficiaries and estates of such persons."  (Id. ¶ 10.)

Prior to January 1, 1996, the Foot Locker Retirement Plan was a "career average pay" plan that calculated and paid benefits according to a formula that based accruals on a specified percentage of employees' annual compensation.  (Id. ¶ 19.)  The Plan generally provided for an annual benefit, commencing at retirement age (age 65), of 1% for the first $10,800 of salary plus 1.5% of the balance of W-2 compensation for that year. (Id.)  At the end of 1995, Foot Locker converted the Plan to a "cash balance" plan for years of service beginning January 1, 1996 (the "conversion date") and froze accruals under the terms of the traditional plan as of December 31, 1995.  (Id. ¶ 20.) Under the terms of the amended "cash balance" Plan, Foot Locker established a hypothetical or notional "account" for each current participant in the Plan, including Plaintiff and members of the proposed Class, and those who joined the Plan at a later date. (Id. ¶ 21.)  Employees who were participants in the Plan as of December 31, 2005, including Plaintiff and the proposed Class, were given an initial account balance equal to the "actuarial equivalent" lump sum value of their accrued benefits under the Plan's prior formula.  (Id. ¶ 24.)  This lump sum value was determined "actuarially" based upon a 9% rate of interest and

5

applicable mortality table as set forth in IRS Revenue Ruling 95-
6.  (Id.)  Employees who joined the Plan after the conversion
date had initial account balances of zero.  (Id.)  Each
participant's hypothetical "account balance" was and is
thereafter increased by "compensation credits" and "interest
credits" added to the account by Foot Locker for years of service
beginning on or after January 1, 1996.  (Id. ¶ 21.)  Participants
who remained with the Plan after the conversion date were and are
entitled to the greater of (A) their "frozen" benefit derived
from the Plan terms as of December 31, 1995, or (B) their
notional account balance calculated under the Plan's cash balance
formula as of the date of retirement or separation from service
(the "greater-of formula").  (Id. ¶ 25.)

     While a common method used by employers to convert a
traditional pension plan to a cash balance plan is to calculate
the actuarial present value of each participant's frozen accrued
benefit at the time of conversion and use that value as the
"opening balance" of the participant's notional cash balance
account, such that participants start out under the cash balance
plan with a benefit equal in value to that she or he had accrued
to date under the old formula, Plaintiff alleges that Defendants
made a "patently unreasonable" assumption by using a 9% interest
rate to determine the "actuarial equivalent" value of

participants' frozen benefit for purposes of establishing participants' opening account balances after conversion. (Id. ¶¶ 28-29, 31.) For participants who were members of the Plan before December 31, 2005 and who remained with the Plan after the conversion date, that is, Plaintiff and members of the proposed Class, the use of a 9% rate effectively rendered notional account balances for participants that were significantly smaller than the benefits they had already accrued under the old Plan as of December 31, 2005. (Id. ¶ 32.) As such, there was a period of time after the conversion date – a "wear-away" period – when these participants effectively ceased accruing additional benefits until they "wore away" the benefits they had already accrued under the old Plan formula. (Id. ¶ 26.) For this period of time – between the time of conversion and the time each participant's cash balance account reached and exceeded the value of his or her frozen accrued benefit – the effective rate of benefit accrual for these participants was and is zero. (Id. ¶ 32.) The period of wear-away experienced by individual participants is longer for older employees because the amount by which an older employee's frozen accrued benefit exceeds his opening account balance is larger than the amount by which a similarly-situated younger employee's accrued benefit exceeds his opening account balance. (Id. ¶¶ 36-37.) Plaintiff's wear-away

7

period extended through the termination of his employment in Fall 2002, meaning that he accrued no new benefits for the work he performed from the date of conversion to his termination - a period of nearly seven years.  (Id. ¶ 33.)

Plaintiff alleges that Defendants failed to provide Plaintiff or other Plan participants with the written notice required under ERISA, that is a written notice setting forth the plan amendment and its effective date after the adoption of the amendment and not less than 15 days before the amendment's effective date.  (Id. ¶ 44.)  Plaintiff alleges that any written notice that was provided did not state or otherwise disclose that Plaintiff and other participants would or could experience a significant reduction in the rate of future benefit accrual, including periods of wear-away during which participants would work for varying periods of time without acquiring any new benefits.  (Id. ¶¶ 40 & 46.)  Rather, Plaintiff asserts, beginning in late 1995 and continuing to the present, Foot Locker issued materially false and misleading statements and omissions concerning the amendment and the amended Plan's cash balance formula, which concealed from Plaintiff and members of the proposed Class the existence and extent of the wear-away problem. (Id. ¶¶ 40 & 47.)  Plaintiff alleges that the summary plan descriptions (SPDs) provided by Defendants since January 1, 1996

8

were and are not written in a manner calculated to be understood

by the average plan participant, as required under ERISA, and

instead contained and contain materially false and misleading

statements and omissions regarding Plaintiff and the proposed

Class members' benefit accruals and rate of benefit of accruals

under the amended Plan.  (Id. ¶¶ 49-50.)

The "Introduction" to the September 30, 1996 Summary Plan

Description explains that,

> "Effective January 1, 1996 the Plan was changed from a
> traditional pension plan to a cash balance pension plan.
> Under the provisions of the Plan in effect prior to
> January 1, 1996, benefits were generally payable to
> eligible participants each month for life at retirement
> and were not usually payable prior to age 55.  Under the
> revised Plan, vested participants have account balances
> which they may take in a lump sum or on a monthly basis
> upon retirement or termination of employment, even if
> they were converted to initial account balances.   To
> accomplish this change, participants' accrued benefits as
> of December 31, 1995 were converted to initial account
> balances."

("The Woolworth Retirement Plan Summary Plan Description (the

"September 30, 1996 SPD") at 1, at Eichberger Decl., Ex. B.)

"For more information on how benefits are determined under this

cash balance pension plan," the Introduction directs participants

to the section entitled, "How Your Retirement Benefit is

Determined."  (Id.)  That section states that a participant's

"benefit is based on the account balance you accrue, or earn,

while a participant" and "[t]hat account balance" consists of

"[an] initial account balance, which is the value of your
Plan benefit as of December 31, 1995, before the Plan was
amended;

interest credited to your account balance; and,

additions to your account balance, called compensation
credits, which are based on years of service and a
percentage of compensation."

(September 30, 1996 SPD at 11, at Eichberger Decl., Ex. B.)

Regarding the initial account balance, the SPD further states

that "[t]hat balance is equal to the actuarial equivalent lump

sum value of your accrued benefit under the Plan as of December

31, 1995."  (Id. at 12.)  That section of the SPD also states

participants' "greater-of" option, that is, a participant's

"accrued benefit at the time your employment terminates is the

greater of the amount determined under the Plan as amended on

January 1, 1996 or your accrued benefit as of December 31, 1995."

(Id.)

Plaintiff filed this action against Defendants alleging

violations of ERISA associated with Defendants' January 1, 1996

conversion to a cash balance plan on February 23, 2007.

Defendants moved to dismiss the Complaint on April 30, 2007.  The

Motion was fully submitted as of June 15, 2007.

10

## II. DISCUSSION

A.   <u>Legal Standard for a Motion to Dismiss under Fed. R. Civ. P.</u>

<u>12(b)(6)</u>

For a complaint to survive dismissal under Rule 12(b)(6),

the plaintiff must plead "enough facts to state a claim to relief

that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 570 (2007). "A claim has facial plausibility," the

Supreme Court has explained,

> "when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.   The
> plausibility standard is not akin to a 'probability
> requirement,' but it asks for more than a sheer
> possibility that a defendant has acted unlawfully. Where
> a complaint pleads facts that are 'merely consistent
> with' a defendant's liability, it 'stops short of the
> line between possibility and plausibility of 'entitlement
> to relief.'"

<u>Ashcroft v. Iqbal</u>, --- S.Ct. ----, 2009 WL 1361536, *12 (May 18,

2009) (quoting <u>Twombly</u>, 550 U.S. at 556-57). "[A] plaintiff's

obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."

<u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted).  "In

keeping with these principles," the Supreme Court has stated,

> "a court considering a motion to dismiss can choose to
> begin by identifying pleadings that, because they are no
> more than conclusions, are not entitled to the assumption

of truth.   While legal conclusions can provide the
framework of a complaint, they must be supported by
factual allegations.  When there are well-pleaded factual
allegations, a court should assume their veracity and
then determine whether they plausibly give rise to an
entitlement to relief."

Iqbal, 2009 WL 1361536 at *13.


B.   Standing

     Defendants argue that the Complaint should be dismissed

for lack of standing, because Defendants assert that at the

time Plaintiff Osberg brought this suit, he was no longer a

Plan "participant," as required for suit under ERISA.

     ERISA § 502(a), 29 U.S.C. § 1132(a) provides that a

"participant" may bring suit under the statute for alleged

violations of ERISA.  ERISA defines "participant" as "any

employee or former employee of an employer, or any member or

former member of an employee organization, who is or may

become eligible to receive a benefit of any type from an

employee benefit plan . . ."  ERISA § 3(7), 29. U.S.C. §

1002(7).  It is well-established that a former employee with

"a colorable claim to vested benefits 'may become eligible'"

for benefits and may bring an action under ERISA.  Firestone

Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989)

(citation omitted).  The word "benefits" is a term of art

referring to vested ERISA plan benefits, and not compensatory

damages, such as those sought for a breach of a fiduciary duty

owed to an ERISA plan.  Bilello v. JPMorgan Chase Retirement

Plan, 592 F.Supp.2d 654, 663 (S.D.N.Y. 2009).  The distinction

between damages and benefits is central, therefore, to

determining whether a former employee who has received a lump-sum

payout has standing to sue under ERISA.  Courts that have

considered this distinction have asked, for example, whether a

money judgment obtained by a victorious plaintiff would

constitute the receipt of a plan benefit previously denied, and

whether the former employee is alleging that his benefit payment

was deficient on the day it was paid under the terms of the plan

and ERISA.  Id. at 664 (citing Harzewski v. Guidant Corp., 489

F.3d 799, 804 (7th Cir. 2007); Graden v. Conexant Systems Inc.,

496 F.3d 291, 303 (3d Cir. 2007)).  Courts answering these

questions in the affirmative have found former employee

plaintiffs to be seeking benefits under ERISA, and therefore

qualified as participants eligible to bring suit under the

statute.  Id. As a Court in this District has recently

explained, for example,

        "if a former employee claims that the lump-sum
        distribution of her account balance would have been

13

> greater absent the defendants' breach of fiduciary duty,
> then the employee may become eligible for benefits and
> qualify as a 'participant' under ERISA.  In other words,
> a claim that ERISA fiduciaries imprudently managed a
> defined contribution account may be brought by former
> employees who have already cashed out their retirement
> benefits, since they are seeking an amount of money to
> which they are entitled by the plan documents over what
> they received when they retired."

Id. at 665 (internal citations and quotation marks omitted).

Plaintiff argues here that his claims are claims for ERISA

benefits because he will be entitled to receive additional Plan

benefits if the Court finds that the amended Plan violated ERISA,

for example because Defendants failed to give Plaintiff and other

participants the notice required by the statute.  In that case,

the amendment will be deemed ineffective as a matter of law, and

Plaintiff will be entitled to receive the monetary amount of

vested benefits owed to him according to the December 31, 2005

Plan terms.  (Pl.'s Opposition at 14-15.)  Because Plaintiff

claims that he is entitled to greater benefits than those he was

paid in his lump-sum distribution, and seeks a recalculation and

redistribution of the amount of benefits that he properly is

owed, Plaintiff's claims may be characterized as claims to

recover plan benefits under § 501(a), and Plaintiff remains a

participant under ERISA with standing to bring suit.  See

Bilello, 592 F.Supp.2d at 666.  Defendants' Motion to Dismiss for
lack of standing is DENIED.


C.    Statute of Limitations

       Defendants next assert that Plaintiff's claims should be
dismissed as time-barred.  ERISA provides no statute of
limitations for civil enforcement actions other than breach of
fiduciary duty claims under ERISA § 413, to which either a three-
or six-year statute of limitations applies.  ERISA § 413(2), 29
U.S.C. § 1113.  As such, the Court must look to and apply the
most similar statute of limitations to Plaintiff's first three
claims.  Defendants contend that the Court should apply the
three-year limitations period for claims "to recover upon
liability, penalty or forfeiture created or imposed by statute"
under C.P.L.R. § 214(2) as the most analogous state law.
However, as the Second Circuit has repeatedly stated, the
judicially inferred statute of limitations for ERISA actions in
New York State is six years, based on the statute of limitations
for contract actions under C.P.L.R. 213.  Slupinski v. First Unum
Life Ins. Co., 554 F.3d 38, 55 (2d Cir. 2009) (citing Miles v.
N.Y. State Teamsters Conf. Pension & Retirement Fund Employee
Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983)).

When a federal court determines a limitations period by applying an analogous state statute of limitations, the court looks to federal common law to determine when the plaintiff's claim accrues.  Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (citation omitted).  Under federal common law, a court generally employs the "discovery rule," under which "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."  Id. (citation omitted).  In the context of a claim for benefits under an ERISA plan, a plaintiff's claim "accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application for benefits."  Carey v. Int'l Bhd. Of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48 (2d Cir. 1999).  Where "the plan documents themselves, rather than their application, are at issue, the statute of limitations . . . accrues when . . . [a plaintiff] discovered or with reasonable due diligence could have discovered the deficiencies in the plan documents of which he complains."  Bilello v. JPMorgan Chase Retirement Plan, 607 F.Supp.2d 586, 593 (S.D.N.Y. 2009).  A claim addressed to the amendment of an ERISA plan accrues "at the earliest, on the date of the plan amendment."  Id. (quoting Romero v. Allstate Corp.,

16

404 F.3d 212, 222 (3d Cir. 2005)).  Discovering the injury under a plan that violates ERISA, however, requires clear notice of the illegal provisions.  Bilello, 607 F.Supp.2d at 593.  "Without clear notice to participants . . . an amendment to the plan adopting an illegal term or feature is insufficient to trigger the running of the statute of limitations . . ."  Id.

Plaintiff alleges in his Complaint that Defendants' communications to Plaintiff and members of the proposed Class regarding the January 1, 1996 amendment to the Plan failed to disclose or explain the terms of the Plan that Plaintiff challenges in this suit.  Specifically, Plaintiff alleges that Defendants did not explain that participants would experience a period of wear-away after the Plan conversion, during which they would accrue no new benefits, or that older participants would experience longer periods of wear-away.  (Compl. ¶ 40.)  Further, Plaintiff alleges that Defendants issued false and misleading statements and omissions concerning the amendment and the amended Plan's cash balance formula that effectively concealed the existence and extent of the wear-away problem from Plaintiff and members of the proposed Class.  (Id.)  The September 30, 1996 SPD repeatedly stated that a participant's "initial account balance" was equal to the value of his or her "Plan benefit as of December 31, 1995," (September 30, 1996 SPD at 1 & 11-12) and Plaintiff

17

has explained that the periodic account statements distributed by

Foot Locker to employees after the conversion date showed no

comparison with the amount accrued and frozen as of December 31,

1995 so that participants would understand that a smaller amount

had been used for the initial account balance.  (Pl.'s Opposition

at 10.)  Given these allegations, and reviewing the September 30,

1996 SPD and the Plan itself and drawing all inferences in

Plaintiff's favor, the Court cannot conclude at this stage of the

litigation that Plaintiff had clear notice, six years prior to

filing the Complaint, that his initial account balance under the

amended Plan would be significantly smaller than his frozen

accrued benefit, and that he would experience a lengthy period of

wear-away before accruing any new benefits.  The claims asserted

by Plaintiff in Counts One, Two and Three of the Complaint are

therefore timely under the applicable six-year statute of

limitations.

Defendants' Motion to Dismiss the breach of fiduciary duty

claim asserted in Count Four on statute of limitations grounds

likewise fails.  Breach of fiduciary duty claims under ERISA are

governed by § 413, which provides that a fiduciary duty claim

must be brought after the earlier of:

> (1) six years after (A) the date of the last action
> which constituted a part of the breach or violation,
> or (B) in the case of an omission the latest date on
> which the fiduciary could have cured the breach or

18

violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

ERISA § 413, 29 U.S.C. § 1113.  Plaintiff asserts that the breaches alleged in Count Four implicate "materially false and misleading statements" that "fail[ed] to disclose that the proposed 1995 amendment and the terms of the amended Plan resulted in the wear-away effect . . . and otherwise caused a significant reduction in the rate of participants' future benefit accrual."  (Compl. ¶ 74.)  Because the Court finds that Plaintiff could not have been expected to discover the breach based on the documents provided by Defendants, which Plaintiff alleges to have concealed effectively the wear-away effect, Plaintiff's breach of fiduciary duty claim is not barred by the six-year statute of limitations for such claims under ERISA § 413.  Defendants' Motion to Dismiss the Complaint on statute of limitations grounds is DENIED.

D.    Age Discrimination

Plaintiff claims that the 1996 Plan amendment is age discriminatory, and therefore violates ERISA § 204(b)(1)(H),

19

because an older employee's benefit accrual was and/or remains ceased or the rate of benefit accrual was and/or remains reduced for a longer period than for an otherwise identically-situated younger employee, solely because of the older employee's age. Defendants argue that Plaintiff's age discrimination claim should be dismissed as a matter of law because it is analogous to challenges against cash balance plans that have been repeatedly rejected by the courts, including the Second Circuit.

> ERISA § 204(b)(1)(H)(i) provides that:
>
> "a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age."

29 U.S.C. Sec 1054(b)(1)(H)(i).  The Second Circuit recently joined the other circuits to have considered the question in holding that cash balance defined benefit plans do not by definition violate ERISA's prohibition against age-based reductions in the rate of benefit accrual.  Hirt v. Equitable Retirement Plan for Employees, Managers and Agents, 533 F.3d 102, 110 (2d Cir. 2008).  Based on the plain language of the statute, the Court reasoned in Hirt that "the rate of benefit accrual" under § 413 cannot be measured "by reference to the end product—the age 65 annuity that can be purchased with the account balance—instead of the periodic deemed contribution thereto," but

20

rather, "the 'rate of benefit accrual' refers to the employer's contribution to a plan, and therefore any difference in output as a result of time and compound interest does not violate Section 204(b)(1)(H)(i)." Hirt, 533 F.3d at 107.  Section 204(b)(1)(H)(i) bars age-based reductions in the rate of benefit accrual, the Court reasoned, and "[o]ne cannot evaluate a rate of accrual without controlling for the passage of time.  Thus, the fact that the ultimate benefit might grow to be larger for younger employees—who have more time until normal retirement age than their older counterparts—would not be relevant to the comparison of accrual rates," and "[a]s the Supreme Court has instructed, '[a] reduction in total benefits due is not the same thing as a reduction in the rate of benefit accrual.'" Hirt, 533 F.3d at 108 (quoting Lockheed Corp. v. Spink, 517 U.S. 882, 897 (1996)).  In Hirt, the Second Circuit held that the "rate of benefit accrual" refers to the employer's contribution to a plan; where the interest credits employers contribute to older and younger workers is the same, these employees' "rate[s] of benefit accrual" are the same, even though the credits distributed to younger workers result in greater ultimate "accrued benefits." See Bilello, 2009 WL 2461005, *15 (S.D.N.Y. Aug. 12, 2009).

      The same logic applies to Plaintiff's claim that the Foot Locker Retirement Plan as amended on January 1, 1996 is age discriminatory under ERISA § 204(b)(1)(H)(i) because older

employees experience a longer period of wear-away than do younger employees. As in Hirt, Foot Locker's contribution to employees' plans in the form of interest credits after the date of conversion is age-neutral. Older employees start with opening account balances that are smaller than those of similarly-situated younger employees, and therefore experience longer periods of wear-away, due to the effect of time on the 9% discount employed by Foot Locker to each employee's frozen accrued benefit in determining the opening account balance. From that opening balance, the rate of benefit accrual is the same across age, given the age-neutral contributions made by Foot Locker. That older employees experience longer periods of wear-away, and may receive a smaller end benefit than similarly-situated younger employees may not be fair to older employees, but it is not barred by ERISA § 204(b)(1)(H)(i), as interpreted by the Second Circuit.[3] Defendants' Motion to Dismiss Count One of the Complaint is GRANTED.

---

[3] The Court notes that the "wear-away" phenomenon, and its disproportionate effect on older workers, is a phenomenon known to be associated with cash balance conversions. The Second Circuit was aware of the problem of wear-away when it rendered its decision in Hirt, as were the other circuit courts that have arrived at the same result. As a court in this District has stated, "[w]ear-away . . . most detrimentally affects older workers . . . . Despite these effects on the benefits of workers nearing retirement, the Second Circuit has held that cash-balance plans do not violate ERISA's prohibition against age discrimination." Bilello, 2009 WL 2461005, *2 (S.D.N.Y. Aug. 12, 2009) (emphasis added).

E.    Notice under ERISA Section 204(h)

Plaintiff alleges in Count Two of the Complaint that Defendants failed to notify Plaintiff and other plan participants of the significant reduction in the rate of future benefit accrual that they would experience upon the conversion to the cash balance formula.  Defendants argue that Count Two should be dismissed for failure to state a claim because Defendants did provide Plaintiff and other participants with the notice required under ERISA § 204(h).

At the time the Plan was amended in 1996, ERISA § 204(h), 29 U.S.C. § 1054(h), which sets forth the requirements for notices distributed in the event of a significant reduction in benefit accrual, required that

> "[a] single-employer plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date."

ERISA § 204(h), Pub.L. 99-272, 100 Stat 82 § 11006 (1986) (current version at 29 U.S.C. § 1054(h)).  The provision as formulated in 1996 required the disclosure of only the amendment and its effective date, and did not seek to regulate the content of the communication any further.  Bilello v. JPMorgan Chase

23

Retirement Plan, 2009 WL 2461005, *13 (S.D.N.Y. Aug. 12, 2009).[4]
To the extent that Plaintiff asserts in Count Two that in 1996,
Defendants were required under § 204(h) to notify participants of
"a significant reduction in the rate of future benefit accrual,"
Plaintiff fails to state a claim.   Further, Plaintiff's claim
that "any written notice that was provided to Plaintiff or other
participants" did not satisfy the requirements of Section 204(h)
is belied by the November 17, 2005 Highlights Memorandum, which
sets forth the Plan amendment and its effective date.   That is
all that was required under § 204(h) at the time of the Plan
conversion.   Defendants' Motion to Dismiss Count Two of the
Complaint for failure to state a claim is GRANTED.


F.    Summary Plan Description under ERISA Section 102

        Count Three of the Complaint alleges that the SPDs
distributed by Defendants to Plan participants were and are
deficient according to the minimum requirements for SPDs set
forth at ERISA § 102.   The Complaint further alleges that the
SPDs contain and contained materially false and misleading
statements and omissions regarding Plaintiff and the proposed

---

[4] Congress amended ERISA in 2001 to provide that an amendment
must "be written in a manner calculated to be understood by the
average plan participant and shall provide sufficient information
... to allow applicable individuals to understand the effect of
the plan amendment."   29 U.S.C. § 1054(h)(2).

Class members' benefit accruals and rate of benefit accruals under the amended Plan.   Defendants move to dismiss Count Three, responding that the SPD distributed in September 1996 disclosed all required information, including how the cash balance benefit would be calculated, that the frozen benefit establishing the initial account balance in the Plan would be calculated based on a 9% discount rate, and that Plan participants electing to receive a lump-sum distribution would receive the greater of either their frozen benefit under the prior formula or the cash balance benefit.

ERISA § 102, 29 U.S.C. § 1022(a) requires that SPDs "be written in a manner calculated to be understood by the average plan participant [and] be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."   ERISA § 102, 29 U.S.C. § 1022(a).   Regulations implementing ERISA further explain that

> "[t]he format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries.  Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant."

29 C.F.R. § 2520.102-2(b).

Plaintiff's claim that the September 30, 1996 SPD was misleading and failed to inform participants that they would

experience a reduction in benefit accrual and varying periods of wear-away upon the Plan conversion survives a Motion to Dismiss. The Court agrees with Plaintiff that the September 30, 1996 SPD's single reference to participants' "greater-or" option was insufficient to inform participants of the reduced benefits under the amended Plan and satisfy the obligations of an SPD under ERISA § 102.   Further, that the SPD disclosed that the initial account balance would be calculated based on a 9% discount rate can hardly be expected to be meaningful and understood by the average plan participant without further explanation as to the effect of that rate – that is, that it would create initial opening account balances that were significantly smaller than participants' to-date accrued benefit balances under the old Plan.   These disclosures appear particularly obscure or unimportant next to repeated assertions in the SPD that the initial account balance under the amended Plan would be "equal to the actuarial equivalent lump sum value of your accrued benefit . . . as of Defendant 31, 2005."   (September 30, 1996 SPD at 6, 11-12.)   Defendants' Motion to Dismiss Count Three of the Complaint is therefore DENIED.

## G.   Breach of Fiduciary Duty

In Count Four of the Complaint, Plaintiff alleges that Defendants breached their fiduciary duties under ERISA § 404(a)

by making materially false and misleading statements and
omissions in connection with the 1996 conversion of the Plan and
by failing to disclose that the Plan amendment and the terms of
the amended Plan resulted in wear-away and caused a significant
reduction in the rate of participants' benefit accrual.
Defendants argue that Count Four should be dismissed because
there is no additional and general fiduciary duty to disclose
when a defendant complies with the disclosure provisions set
forth in ERISA.

ERISA § 404(a)(1)(B) imposes a duty on fiduciaries to

> "discharge [their] duties with respect to a plan solely
> in the interest of the participants and . . . with the
> care, skill, prudence, and diligence under the
> circumstances then prevailing that a prudent man acting
> in a like capacity and familiarity with such matters
> would use in the conduct of an enterprise of a like
> character and with like aims."

29 U.S.C. § 1104(a)(1)(B). "[W]hen a plan administrator
affirmatively misrepresents the terms of a plan or fails to
provide information when it knows that its failure to do so might
cause harm, the plan administrator has breached its fiduciary
duty to individual plan participants and beneficiaries." Devlin
v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 88 (2d Cir.
2001) (citation omitted).

Defendants' arguments in favor of dismissal of Count Four
fail in light of the survival of Count Three. Plaintiff has

27

stated a claim for breach of fiduciary duty based on Defendants'
allegedly materially false and misleading statements that
concealed or failed to reveal that participants' benefits under
the cash balance formula would be lower than under the pre-1996
Plan, and that a sometimes lengthy period of wear-away would
occur.  See Bilello, 2009 WL 2461005 (S.D.N.Y. Aug. 12, 2009).
Defendants' Motion to Dismiss Count Four of the Complaint is
therefore DENIED.

III. CONCLUSION

For the reasons set forth above, Defendants' Motion to
Dismiss the Complaint is GRANTED as to Counts One and Two and
DENIED as to Counts Three and Four.  Defendants shall answer
Counts Three and Four of the Complaint within 30 (thirty) days of
the date of this Memorandum and Order.

SO ORDERED.

Dated:    New York, New York
September 16, 2009

Deborah A. Batts
United States District Judge

28