USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-2-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GEOFFREY OSBERG                                 :
                                                :
On behalf of himself and on                     :
behalf of all others similarly situated,        :
                                                :   Case No.:  07 CV 1358 (KBF)
                  Plaintiff,                    :
                                                :
                                                :
      - against -                               :
                                                :
FOOT LOCKER, INC.,                              :
                                                :
FOOT LOCKER RETIREMENT PLAN,                    :
                                                :
                  Defendants.                   :
-------------------------------------------------------X

The parties in *Osberg v. Foot Locker, Inc*, through their respective undersigned counsel, stipulate that as follows:

**Topics for Defendant Foot Locker, Inc.:**

1. **Characteristics of Plan Participants in 1995 and 1996**

    a.  The breakdown of job positions participants who are members of the putative class held in 1995 and 1996 and the proportion of the participant-employee population in each position (for job positions held by at least 5% of the putative class).

    Attached to this Stipulation are documents that show, for those employees for whom there is available information on file with Foot Locker, the job positions held by employees in 1995 and 1996 and the number of employees in each such position. The 1995 position and participant list is Bates-stamped FL-OSB 017410 and the 1996 position and participant list is Bates-stamped FL-OSB 017411. Despite an extensive and good faith search, Defendants are unable to locate records regarding the job titles for the remaining Foot Locker employees during this time period.

    b.  Minimum educational requirements for each job position held by at least 5% of the putative class.

    Defendants did not ordinarily require a minimum educational requirement for its associates with the exception of professional positions like accountants and lawyers. Defendants required accountants to have a college degree and required lawyers to have a Juris Doctor. There may have been additional minimum educational requirements for select positions within departments other than those housing accounting and legal, which

would have been determined by the department heads, but Defendants have been unable, after an extensive and good faith search, to locate records of these requirements.

2. **Aggregate Employee Payroll and Benefit Expense for 1994 and 1995 for the Woolworth Control Group**

   a.   As reported for accounting purposes.

   The aggregate employee payroll in 1994 for associates in the U.S. and Puerto Rico was $905,479,810.54. The aggregate employee payroll in 1995 for associates in the U.S. and Puerto Rico was $861,602,787.87. These figures also constitute the cash outlay in 1994 and 1995 for the U.S. and Puerto Rico payroll. Despite an extensive and good faith search, Defendants are unable to locate the source documentation from which to determine benefit expenses for 1994 and 1995.

   Despite an extensive and good faith search, Defendants are unable to determine the 1994-1995 aggregate employee payrolls, benefit expenses, and their associated cash outlays for Woolworth's international subsidiaries.

   b.   Cash outlay.

   See above.

3. **Calculation of the Company's Estimated Annual Cost for Benefits Reported in Personal Benefit Statements.**

   a.   Calculation of $11,331 figure on page 2 of [2002 Osberg Personal Benefit Statement].

   The document Bates-stamped FL-OSB 015688-97 constitutes the template that has been used for making these calculations from at least the late 1980's until 2010. Despite an extensive and good faith search, Defendants are unable to determine how long before the late 1980's this template was in use. Furthermore, despite an extensive and good faith search, Defendants are unable to locate the source documentation from which to determine how the Company calculated the estimated annual cost for Mr. Osberg in 2002. Defendants do not have records prior to calendar year 2003 showing the figures from which the Company determined the estimated annual cost for individual participants. Defendants do not know whether it would be possible to trace this information for the period after 2003, as this information is stored on archived data, but it would be unduly burdensome to attempt to do so for each Plan participant included in Topic 3(b). The attached document, Bates-stamped FL-OSB 017412, is an example of how the Company calculates its annual cost per participant, using the template and codes provided in FL-OSB 015688-97 and FL-OSB 017413-26.

   Despite an extensive and good faith search, Defendants are unable to locate "Tab 1." Defendants believe that "Tab 1" refers to the underlying text of FL-OSB 015688-97, which is attached as the document Bates-stamped FL-OSB 017413-26.

      b.      Method of calculating Company's annual cost for benefits reported on statements for other Plan participants produced by Defendants in discovery to date.

See above.

**4.**    **Plan Design Issues**

      a.      The basis for using 9% as the discount rate assumption for purposes of calculating initial account balances.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      b.      The basis for using a mortality discount for purposes of calculating initial account balances.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      c.      The basis for the one-time enhancement to initial account balances.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

**5.**    **Wear-away Statistics and Other Information**

      a.      The Periods of Wear-away that the Company was expecting, predicting or forecasting as a result of the cash balance plan conversion, including any related analyses, studies and/or forecasts.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      b.      As of September, 13, 1995, the expected reduction in benefit liabilities and funding contributions attributable to any expected Periods of Wear-away following the cash balance plan conversion, including any related analyses.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      c.      As of September 13, 1995, the GATT rates that the Company was expecting, predicting or forecasting in the years following the cash balance plan conversion, including any related analyses, studies and/or forecasts.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

## Topics for the Defendant Plan:

6. **Normal Cost Statistics**

    a. For the 1995 Plan year, the normal cost under the Plan.

    The normal cost for the 1995 Plan year was $9,797,524. FL-OSB 011095; FL-OSB 004475.

    b. For the 1996 Plan year, the estimated normal cost under the Plan had the Plan's benefit formula not been amended.

    The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    c. For the 1996-2005 Plan years, the total normal cost under the Plan for each year and the portion of each year's normal cost attributable to individuals who are members of the putative class.

    The normal cost for years 1996-2005 are as follows: $4,001,735; $3,530,275; $3,279,746; $2,524,285; $2,795,686; $3,006,549; $5,638,187; $5,438,021; $6,312,719; $6,202,259. See, e.g., FL-OSB 003284; FL-OSB 005626; FL-OSB 000826; FL-OSB 003356; FL-OSB 001156; FL-OSB 013784; FL-OSB 013828; FL-OSB 014039; FL-OSB 014184; FL-OSB 014209; FL-OSB 014353.

    As to the portion of each year's normal cost attributable to individuals who are members of the putative class, Defendants are in possession of no information other than that which is contained in documents that have been produced or in deposition testimony.

    d. The source(s) of the actuarial loss due to plan amendments reported at FL-OSB 003279.

    The actuarial loss "due to plan amendments reported at FL-OSB 003279" is reported on the page stamped FL-OSB 003283, entitled Section 1.2 Actuarial Gain (Loss). Despite an extensive and good faith search, Defendants have located no information other than this report from which to determine the source of the actuarial loss reported.

    e. The assumption regarding percentage of participants who would elect to take a lump sum that was used for purposes of the actuarial valuation for the 1996 Plan year (FL-OSB 003275-3326)

The actuarial report for Plan year 1996 reflects an assumption that all participants would elect to receive their benefit in the form of an annuity. *See* FL-OSB 003324. Despite an extensive and good faith search, Defendants have been unable to locate any other information responsive to this question.

 f. The assumption regarding percentage of participants who elect to take a lump sum that was used for purposes of the actuarial valuation for the 1998 Plan year (FL-OSB 003346-98).

The actuarial report for Plan year 1998 reflects an assumption that all participants would elect to receive their benefit in the form of an annuity. *See* FL-OSB 003388. Despite an extensive and good faith search, Defendants have been unable to locate any other information responsive to this question.

7. **Early Retirement Subsidy Statistics**

 a. For each year after 1995, the number of participants who commenced benefit distributions in that year after attaining age 55 with at least 15 years of service.

Counsel for both the Plaintiff and Defendants agree that Topic 7(a) will be addressed in expert discovery and not fact discovery.

 b. The number of these participants who elected to receive all or any portion of their benefit in the form of an immediate annuity.

Counsel for both the Plaintiff and Defendants agree that Topic 7(b) will be addressed in expert discovery and not fact discovery.

8. **Wear-away Statistics and Other Information**
 a. How long wear-away lasted for participants, including the observed average and median Period of Wear-away period for all Plan participants.

Counsel for both the Plaintiff and Defendants agree that Topic 8(a) will be addressed in expert discovery and not fact discovery.

 b. The last Plan participant(s) to conclude their Period of Wear-away.

Counsel for both the Plaintiff and Defendants agree that Topic 8(b) will be addressed in expert discovery and not fact discovery.

 c. The identities of all Plan participant(s) (if any) who had a non-zero initial account balance under the Plan as of January 1, 1996 who did not experience a Period of Wear-away.

Counsel for both the Plaintiff and Defendants agree that Topic 8(c) will be addressed in expert discovery and not fact discovery.

    d.    The Periods of Wear-away that the Plan's fiduciaries were expecting, predicting or forecasting as a result of the cash balance plan conversion, including any related analyses, studies and/or forecasts.

What the Plan administrator knew or believed about expected, predicted, forecasted, potential and/or actual periods of wear-away as a result of the cash balance plan conversion was based primarily on Patricia Peck's, Tom Kiley's, Carol Kanowicz's, and Marion Derham's knowledge and beliefs, if any, based on the information provided to them, about expected, predicted, forecasted, potential and/or actual periods of wear-away as a result of the cash balance plan conversion. To the best of Defendants' knowledge, the Plan administrator did not have an independent source of information about the periods of wear-away that were expected, predicted or forecasted as a result of the cash balance plan conversion in the 1995-2000 time frame to which Ms. Peck, Mr. Kiley, Ms. Kanowicz, and/or Ms. Derham did not have access. Defendants have been unable to locate any employees or former employees of Foot Locker who can provide additional information about this subject beyond what is reflected the testimony provided by Ms. Peck, Mr. Kiley, Ms. Kanowicz, and Ms. Derham.

Further, Defendants have been unable to locate any analyses, studies or forecasts prepared by, for, or at the direction of the Plan Administrator during that period that appear to be specifically designed to forecast periods of wear away. However, there are documents that have been produced that constitute or reflect communications from Mercer to Foot Locker concerning periods of wear away, or periods in which normal cost would be reduced due to wear away, or from which the Plan Administrator could extract information about the expected period of wear away. These include the following documents, as well as other documents of this type that, on their face, indicate that they were sent to or recorded by Foot Locker employees. *See, e.g.,* MercerFL0003001; MercerFL0002704; MercerFL0002498; FL-OSB 002437-2444; FL-OSB 002343; FL-OSB 007347; FL-OSB 002376; FL-OSB 002304.

    e.    As of September 13, 1995, the expected reduction in benefit liabilities attributable to any expected periods of wear away following the cash balance plan conversion, including any related analyses.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    f.    The GATT rates that the Plan's fiduciaries were expecting, predicting or forecasting in the years following the cash balance plan conversion, including any related analyses, studies and/or forecasts.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

9. **Benefit Formula Mechanics**

    a.    The mechanics by which the Plan benefit formulas operate pre/post conversion.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

b.  The details governing the Plan's provisions, in particular the greater-of feature, the minimum benefit feature, the lump sum option, and benefits provided at early retirement.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

### 10. Personnel Involved

a.  The identities of all personnel whose responsibilities in any way involved the Plan and/or Plan communication from the cash balance plan conversion to the present, including their respective position, work history, percentage of work-time devoted to the Plan and other responsibilities.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

## Topics for Retirement Administration Committee and/or the Plan Administrator:

### 11. Plan Administration

a.  Membership of the Retirement Administrative Committee ("RAC") between 1995 and 2005.

In 1995, the RAC members were R.N. Farah, J.H. Cannon, D.W. Hilpert, A.P. Hines, P.A. Peck, and W.B. Thompson. *See, e.g.*, FL-OSB 015191. In 1996, the RAC members were R.N. Farah, J. Gillespie, D.W. Hilpert and A.P. Hines. For the years 1997 and 1998, the RAC members were R.N. Farah, J. Gillespie, D.W. Hilpert, and R. Johnson. In 1999, the RAC members were R.N. Farah, D.W. Hilpert, B. Hartman and D. Lee. Note that in 2000 the RIC and the RAC merged to form the Retirement Plan Committee.

b.  Membership of the Retirement Investment Committee ("RIC") between 1995 and 2005

In 1995, the RIC members were M.P. MacKimm, J.W. Adams, H. Galland, and J.J. Mackowski. *See, e.g.*, FL-OSB 015191. In 1996, the RIC members were M.P. MacKimm, P. Crawford, J.W. Adams, H. Galland, and J.J. Mackowski. *See, e.g.*, FL-OSB 012688. In 1997, the RIC members were M.P. MacKimm, P. Crawford, J.W. Adams, H. Galland, and J.J. Mackowski. *See, e.g.*, FL-OSB 12890. In 1998, the RIC members were M.P. MacKimm, P. Crawford, J.W. Adams, H. Galland, and J.J. Mackowski. In 1999, the RIC members were M.P. MacKimm, P. Crawford and J.J.

Mackowski. Note that in 2000 the RIC and the RAC merged to form the Retirement Plan Committee.

c.  Roles of the RAC and RIC between 1995 and 2005.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

d.  The lines of authority within the RAC and RIC.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

e.  The responsibilities of each RAC and RIC member.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

f.  Identity of the natural person(s) who acted as fiduciaries with respect to the preparation and distribution of (i) the September 15, 1995 Farah-Hilpert Letter (FL-OSB 000704); (ii) the November 17, 1995 ERISA 204(h) Notice; (iii) the 1996 Summary Plan Description ("SPD"); (iv) the Estimated Retirement Plan Statement as of January 1, 1996 (FL-OSB 001871); the Retirement Plan Statement as of January 1, 1996 (FL-OSB 001875); the Retirement Plan Statement as of January 1, 1997 (FL-OSB 001873); and the Retirement Plan Statement as of January 1, 1998 (FL-OSB 003783) (together, the "Plan-Wide Participant Communications").

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

g.  The specific roles of each of the persons identified in paragraph f with respect to the Plan-Wide Participant Communications.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

h.  Identity of the natural person(s) who appointed and/or had responsibility for monitoring the persons described in paragraph f with respect to their responsibilities described in paragraph g.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    i.    Procedures followed and actions taken by the persons described in paragraphs f and h to carry out their fiduciary responsibilities in the manner required by ERISA.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    j.    Procedures followed by the persons described in paragraphs f and h to document that they carried out their fiduciary responsibilities in the manner required by ERISA.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

**12.    Plan-Wide Communications**

    a.    Why the one-time enhancement to initial account balances was not disclosed in the November 17, 1995 ERISA §204(h) notice.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    b.    Why the interest rate and mortality assumptions used to calculate initial account balances were not disclosed in the November 17, 1995 ERISA §204(h) notice.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    c.    The process by which the participant communications strategy was developed, implemented and overseen with regard to the conversion of the Plan's benefit formula to cash balance design, including in conjunction with communications pertaining to Foot Locker's implementation of a 401(k) plan.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    d.    The identity of the natural person(s) who were involved in the drafting, review and/or approval of the Plan-Wide Participant Communications.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

e. The identity of the natural persons described in Topic 12(e) subparts I-V of Plaintiff's March 18 Notice of Deposition.

### 1. September 15, 1995 Farah/Hilpert Letter

  i. The person(s) with primary drafting responsibility for the "Dear U.S. Associate" document, a copy of which was produced to Plaintiff with the stamp FL-OSB 002259.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

  ii. The person(s) who approved the final version of the "Dear U.S. Associate" document, a copy of which was produced to Plaintiff with the stamp FL-OSB 002259, for presentation to Messrs. Farah and Hilpert for their signature.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

  iii. The person(s) who wrote the "DRAFT 9/1 Dear U.S. Associate" document stamped FL-OSB 005076 (the printed text, not the handwritten edits).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

  iv. The person whose handwritten edits are reflected on the "Draft 9/1 Dear U.S. Associate" document stamped FL-OSB 005076. [Plaintiff believes the person referenced here to be Patricia A. Peck]

The handwritten edits reflected on the document stamped FL-OSB 005076 are those of Patricia A. Peck.

  v. The person whose handwritten edits are reflected on the "Draft 9/1 Dear U.S. Associate" document stamped FL-OSB 003204. [Plaintiff believes the person referenced here to be Thomas J. Kiley]

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

  vi. The person whose handwritten edits are reflected on the "Draft 9/1 Dear U.S. Associate" document stamped FL-OSB 005078. [Plaintiff believes the person referenced here to be Patricia A. Peck]

The handwritten edits reflected on the document stamped FL-OSB 005078 are those of Patricia A. Peck.

    vii. The person whose handwritten edits are reflected on the "Draft 9/1 Dear U.S. Associate" document stamped FL-OSB 010620. [Plaintiff believes the person referenced here to be Thomas J. Kiley]

The handwritten edits reflected on the document stamped FL-OSB 010620 are those of Thomas J. Kiley.

### II. November 17, 1995 204(h) Notice

    i. The person(s) with primary drafting responsibility over the "November 17, 1995 Highlights Memorandum," a copy of which was produced to Plaintiff with the stamp FL-OSB 000558-60.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    ii. The person(s) who approved the final version of the "November 17, 1995 Highlights Memorandum," a copy of which was produced to Plaintiff with the stamp FL-OSB 002285-86.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    iii. The person(s) who wrote the "10/2/95 DRAFT SIX "B" Paper" document stamped FL-OSB 002285-86.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    iv. The person(s) who wrote Drafts One through Five of the ""B" Paper" document described immediately above.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    v. The person whose handwritten edits are reflected the "10/2/95 DRAFT SIX "B" Paper" document stamped FL-OSB 004206-07. [Plaintiff believes the person referenced here to be Thomas J. Kiley]

The handwritten edits reflected on the document stamped FL-OSB 004206-07 are those of Thomas J. Kiley.

      vi. The person whose handwritten edits are reflected on the "10/2/95 DRAFT SIX "B" Paper" document stamped FL-OSB 004208-09. [Plaintiff believes the person referenced here to be William Barry Thomson]

The handwritten edits reflected on the document stamped FL-OSB 004208-09 are those of William Barry Thomson.

      vii. The person(s) who wrote the "11/1/95 DRAFT 7 "B" Paper" document stamped FL-OSB 002280-82.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      viii. The person whose handwritten edits are reflected on the 11/1/95 DRAFT 7 "B" Paper" document stamped FL-OSB 002268-70. [Plaintiff believes the persons referenced here to be Patricia A. Peck and Gary M. Bahler]

The handwritten edits reflected on the document stamped FL-OSB 002268-70 are those of Patricia A. Peck and Gary M. Bahler.

      ix. The person whose handwritten edits are reflected on the "11/1/95 DRAFT 7 "B" Paper" document stamped FL-OSB 002271-73. [Plaintiff believes the person referenced here to be Patricia A. Peck]

The handwritten edits reflected on the document stamped FL-OSB 002271-73 are those of Patricia A. Peck.

      x. The person whose handwritten edits are reflected on the "11/1/95 DRAFT 7 "B" Paper" document stamped FL-OSB 002277-79. [Plaintiff believes the person referenced here to be Thomas J. Kiley].

The handwritten edits reflected on the document stamped FL-OSB 002277-79 are those of Thomas J. Kiley.

      xi. The person(s) who wrote the "11/14/95 DRAFT 8 "B" Paper" stamped FL-OSB 004221-23.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      xii. The person(s) whose handwritten edits are reflected on the "11/14/95 DRAFT 8 "B" Paper" document stamped FL-OSB 002265-67. [Plaintiff believes the person referenced here to be Thomas J. Kiley]

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      xiii. The person whose handwritten edits are reflected on the "11/14/95 DRAFT 8 "B" Paper" document stamped FL-OSB 011445-57. [Plaintiff believes the person referenced here to be Lisa A. Berkowitz]

The handwritten edits reflected on the document stamped FL-OSB 011445-57 are those of Lisa A. Berkowitz.

### III. Estimated Retirement Plan Statement as of January 1, 1996

      i. The person(s) with primary drafting responsibility for the document "Your Estimated Retirement Plan Statement as of January 1, 1996," a copy of which was produced to Plaintiff with the stamp FL-OSB 002369-70.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      ii. The person(s) who approved the final version of the document "Your Estimated Retirement Plan Statement as of January 1, 1996," a copy of which was produced to Plaintiff with the stamp FL-OSB 006062-63.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      iii. The person(s) who wrote the "Estimated Retirement Plan Statement as of December 31, 1995" document stamped PROSK-OSB 000561-62 (the printed text, not the handwritten edits).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

      iv. The person(s) who wrote the "Benefit Payment Application" document stamped PROSK-OSB 000565-66 (the printed text, not the handwritten edits).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

> v. The person(s) who decided which of the handwritten edits reflected in the documents identified in C.3.a.-b. (immediately above) were incorporated (or not) into the final version of the document "Your Estimated Retirement Plan Statement as of January 1, 1996."

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

### IV. Retirement Plan Statement as of January 1, 1996

> i. The person(s) with the primary drafting responsibility for the document "Your Estimated Retirement Plan Statement as of January 1, 1996," a copy of which was produced to Plaintiff with the stamp FL-OSB 006061.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

> ii. The person(s) who approved the final version of the document "Your Estimated Retirement Plan Statement as of January 1, 1996," a copy of which was produced to Plaintiff with the stamp FL-OSB 006061.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

> iii. The name(s) of the persons who wrote the document "Your Estimated Retirement Plan Statement as of January 1, 1996" with the stamp FL-OSB 001864-65.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

> iv. The name(s) of the person(s) who wrote the document "Your Estimated Retirement Plan Statement as of January 1, 1996" with the stamp FL-OSB 001866.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

### V. 1996 Summary Plan Description

    i. The person(s) with primary drafting responsibility for the "September 1996 Summary Plan Description," a copy of which was produced to Plaintiff with the stamp FL-OSB 004249-72.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    ii. The person(s) who approved the final version of the "September 1996 Summary Plan Description," a copy of which was produced to Plaintiff with the stamp FL-OSB 004249-72.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    iii. The name(s) of the person(s) who wrote the "Summary Plan Description Draft 9/20/96" document stamped PROSK-OSB 000174-96 (the printed text, not the handwritten edits).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    iv. The name of the person whose handwritten edits are reflected in the "Summary Plan Description" drafts stamped (i) FL-OSB 003156-78; (ii) MercerFL0000193-215; (iii) FL-OSB 007323-46; and (iv) FL-OSB 007373-82. [Plaintiff believes the persons referenced here to be: (i) Thomas J. Kiley; (ii) James P. Cassidy, among other editors; (iii) Jeremy Nowak; and (iv) Thomas J. Kiley.]

Defendants stipulate that the handwritten edits reflected on the document stamped: FL-OSB 003156-78 are those of Thomas J. Kiley; FL-OSB 007323-46 are those of Jeremy Nowak; and, FL-OSB 007373-82 are those of Thomas J. Kiley.

As to the handwritten edits reflected in the "Summary Plan Description" draft stamped MercerFL0000193-215, the parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

    v. The person(s) who decided which of the handwritten edits reflected in the "September 1996 Summary Plan Description" document stamped PROSK-OSB 000172-96 were incorporated (or not) into the final version of the document that was distributed to Plan participants (*e.g.*, FL-OSB 004249-72).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

13. **Other Plan Communications**

   a. The natural person(s) who were involved in the drafting, review and/or approval of all Participant Communications produced by Defendants in this litigation (not including the Plan-Wide Participant Communications discussed above).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

   b. The specific person(s) and/or groups of person(s) who received each Participant Communication produced by Defendants in this litigation (not including the Plan-Wide Participant Communications discussed above).

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

   c. What each Participant Communication disclosed and how it did so.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

   d. The natural person(s) who described the features of the 1996 Plan and/or the cash balance plan conversion orally to participants and the dates, times and locations that such oral descriptions took place.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

   e. The natural person(s) who answered participant questions concerning the 1996 Plan and/or the cash balance plan conversion and the dates, times and locations that such discussions took place.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

   f. The dates, times, locations, presenter(s) and presentee(s) of every oral and/or written presentation concerning the 1996 Plan and/or the 401(k) plan given to Plan participant including the content of participant questions and responses.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

**14.   Releases**

a. The natural person(s) who were involved in the drafting, review and/or approval of all "releases" that Defendants argue in their answer would bar participants from pursuing claims in this litigation, including supporting evidence.

Defendants believe Rina Traub was involved in the drafting of the releases. Apart from this, the parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

b. The specific person(s) and/or groups of person(s) who received each such "release," including supporting evidence.

The parties stipulate that Defendants possess no additional factual information besides what is contained in the documents produced by Defendants in this litigation or provided in the testimony of the witnesses whose depositions have been taken in this litigation.

STIPULATIONS:

DATED: April 12, 2012

*[signature]*

Eli Gottesdiener [EG 0111]
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215
Telephone: (718) 788-1500
Fax: (718) 788-1650

*Attorney for the Plaintiff and the proposed Class*

DATED: April 12, 2012.

*[signature]*

Myron D. Rumeld (MR-3941)
Bridgit M. DePietto (BD-1110)
Howard Shapiro (*admitted pro hac vice*)
Nicole A. Eichberger (*admitted pro hac vice*)
Robert W. Rachal (*admitted pro hac vice*)
Page W. Griffin (*admitted pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
d 212.969.3021
f 212.969.2900

*Attorneys for Defendants*

May 2, 2012

SO ORDERED:

*[signature]*

HON. KATHERINE B. FORREST
UNITED STATES DISTRICT JUDGE