**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

**GEOFFREY OSBERG**                                              :
                                                                 :
**On behalf of himself and on**                                  :
**behalf of all others similarly situated,**                     :
                                                                 :     **Case No.: 07 CV 1358 (KBF)**
          **Plaintiff,**                       :
                                                                 :
    - against -                                    :
                                                                 :
**FOOT LOCKER, INC.,**                                           :
                                                                 :
**FOOT LOCKER RETIREMENT PLAN,**                                 :
                                                                 :
       **Defendants.**                         :
                                                                 X

**<u>DEFENDANTS' RESPONSES AND OBJECTIONS</u>**
**<u>TO PLAINTIFF'S FIFTH SET OF DISCOVERY REQUESTS</u>**

      Defendants Foot Locker, Inc. and Foot Locker Retirement Plan (collectively

"Defendants"), through undersigned counsel, respond and object as follows to Plaintiff's Fifth

Set of Discovery Requests.

**<u>Preliminary Statement</u>**

1.   Defendants incorporate by reference the Preliminary Statement set forth in all

     Defendants' Objections and Responses to Plaintiff's prior sets of discovery requests.

2.   In responding to Plaintiff's Fifth Set of Discovery Requests, Defendants do not concede

     that any of the information provided is relevant, material, admissible, or reasonably

     calculated to lead to the discovery of admissible evidence. Defendants reserve the right to

     modify or to supplement their responses with such pertinent information as they may

     discover subsequently.

1

3.  These responses reflect only the current state of Defendants' knowledge, understanding and belief with respect to the matters addressed in Plaintiff's Fifth Set of Discovery Requests. These responses are neither intended as, nor shall in any way be deemed, an admission or representation that further information or documents do not exist.

4.  Defendants reserve the right to modify or to supplement their responses with such pertinent information as they may discover subsequently. Furthermore, these responses are given without prejudice to Defendants' right to use or to rely on at any time, subsequently discovered information or documents, or information or documents omitted from these responses as a result of, among other things, mistake, error, oversight or inadvertence.

5.  By responding to any of Plaintiff's Fifth Set of Discovery Requests, Defendants do not waive their right to object to the use of any such information and/or documents disclosed herein for any reason including, but not limited to, relevancy objections. The response to a specific Request for Production shall not be construed as an admission that Defendants accept or admit the existence of any document, evidence, fact, and/or thing, and/or validity of any legal argument, set forth in or assumed by such Interrogatory or Request for Production.

6.  Unless otherwise stipulated at a subsequent time, Defendants' Responses are made solely for the purpose of this Action and not for the purpose of any other action, including any other action which now is or in the future may be pending between or against some or all of the parties hereto.

7.  Defendants' production of any responsive information or documents to the instant discovery requests are subject to the provisions of the Stipulated Protective Order.

8. Except where otherwise indicated, Defendants' responses to any Request for Production will be limited to producing responsive, non-privileged or non-work product information and/or documents in existence prior to the commencement of this Action.

**Defendants' General Objections As to Plaintiff's Fifth Discovery Request.**

1. Nothing contained herein is intended to be, nor shall in any way be construed as, a waiver of any attorney-client privilege, work-product doctrine, right to privacy, or any other applicable doctrine or privilege. To the extent any Request for Production may be construed as calling for disclosure of information protected by any such privilege or doctrine, a continuing objection to each and every Request for Production is hereby interposed.

2. Defendants object to each and every Request for Production insofar as it attempts to elicit information constituting attorney work product; documents prepared or information gathered in anticipation of litigation; or insofar as any Request for Production attempts to elicit information subject to the attorney/client privilege and/or other applicable privilege. Pursuant to the proposed Stipulated Protective Order, the inadvertent production of a document that is subject to the protection of the work-product doctrine, the attorney/client privilege and/or any other applicable privilege, is not intended to waive such privileges. In accordance with the proposed Stipulated Protective Order, Defendants retain the right to retrieve documents inadvertently produced, including copies made of said documents, if any, which are deemed to be subject to any privilege.

3. Defendants object to any Request for Production that calls for the production of documents or disclosure of information that is confidential and proprietary, including, but not limited to, any document or information that constitutes a trade secret. Defendants

will only produce such documents and information that are relevant, non-privileged, and not protected from production and disclosure by the attorney work product or other applicable doctrine, and will do so subject to the proposed Stipulated Protective Order.

4.  Defendants object to each Request for Production to the extent it seeks to impose obligations or requirements beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, or the applicable standing orders and orders of this Court.

5.  Defendants object to these Discovery Requests as burdensome and unnecessary in light of the exchange of information that has occurred already.  Moreover, many of the discovery requests are beyond what the parties agreed to when an agreement was reached to expand discovery, and therefore constitute improper discovery requests.

6.  Defendants have acknowledged repeatedly that a Document Hold Memorandum was not issued until October 8, 2009.  Defendants have shown Plaintiff evidence repeatedly that no relevant documents were lost as a result of the Document Hold Memorandum issuing on October 8, 2009.  Defendants incorporate by reference, and attach to this Discovery Response the following documents and Exhibits, all produced and served previously on Plaintiff, providing the complete background and framework for the discovery issues that are at issue.

    a.  The March 1, 2012 Declaration of Nicole A. Eichberger, and supporting Exhibits, bates stamped FL-OSB 012039-55.

    b.  The March 21, 2012 Letter from Howard Shapiro to Messrs. Gottesdiener and Norgard.

c.  The March 21, 2012 Amended Declaration of Nicole A. Eichberger, and

supporting Exhibits, bates stamped FL-OSB 014926-46.

d.  The April 2, 2012 Letter from Howard Shapiro to Messrs. Gottesdiener and

Norgard.

e.  The April 24, 2012 Letter from Myron Rumeld to Messrs. Gottesdiener and

Norgard.

7.  Moreover, in an effort to avoid responding to superfluous discovery requests, such as

Plaintiff's Fifth Set of Discovery, Defendants have made available for deposition and

interviews the following witnesses who have testified about the subject matter of

Plaintiff's Fifth Set of Discovery, including:

a.  Andrea Rattner, a partner of Proskauer Rose LLP, who was deposed on March 14,

2012, as to Proskauer's document preservation practices in this matter.

b.  On March 23, 2012, Defendants voluntarily produced for questioning Philip

Wisoff, Chief Information Officer of Proskauer Rose LLP.  Mr. Wisoff was

interviewed by Plaintiff's Counsel as to Proskauer's document preservation

practices and answered the discovery requests that are propounded herein.

c.  On March 23, 2012, Defendants voluntarily produced for questioning eight

members of Foot Locker's internal I.T. department.  These eight individuals were

interviewed by Plaintiff's counsel as to Foot Locker's document preservation

practices and as to ESI practices.  These persons answered the discovery requests

that are propounded herein.

   d.   Additionally, Defendants have offered to provide Mr. Sheehan as a Fed. R. Civ.

        Pro. 30(b)(6) witness as to Defendants' document preservation efforts.

8.   Defendants object to this Fifth Set of Discovery Requests because Defendants have

     produced all relevant documents already.  The only documents that have not been

     produced are those that are subject to legal privilege and/or the attorney work-product

     doctrine.  While not required to provide a log of documents involving Defendants'

     counsel internal thoughts, deliberation, and strategy, as to document collection, on June

     1, 2012, Defendants, in an abundance of caution, will provide a log of the documents

     referred to in Amended Exhibit A (bates stamp number FL-OSB 014926-33), March 21,

     2012 Amended Declaration of Ms. Eichberger.

## REQUEST

**RFP No. 40**

Please produce all documents concerning and/or reflecting Defendants' and/or defense counsel's efforts to preserve documents potentially relevant to this lawsuit, "[e]fforts [] to locate and to collect potentially relevant information and/or documents for this Action," "[e]fforts to ensure and verify that potentially relevant information and/or documents (in hard-copy form or as electronically stored information ('ESI')) were not lost or destroyed," 3/21/12 Eichberger Decl. ¶ 3(a)-(b), efforts to investigate what potentially relevant documents may have been and/or were destroyed from February 15, 2006 up to and including the present; and the results of any such efforts and/or investigations.  This request specifically includes, but is not limited to, the following, regardless of whether such efforts and/or investigation relates to documents in the possession, custody, or control of Defendants, defense counsel, third-party consultants, recordkeepers, and/or administrators:

6

**Defendants' Response**:  Defendants object to RFP No. 40 to the extent that identifying the requested documents would reveal Defendants counsel's strategy, mental impressions, conclusions, opinions and/or legal theories, and thus invades the attorney work-product privilege.  Defendants also object to RFP No. 40 on the grounds that it is overbroad, unduly burdensome, requests documents that are irrelevant to the two remaining claims at issue in this Action, and requests documents that are not reasonably calculated to lead to the discovery of admissible evidence.  Finally, Defendants object to Request for Production No. 40 in its entirety because the discovery requests are actually Interrogatories.  However, Plaintiff surpassed the limit as to Interrogatories he can propound, so instead propounds Request for Production No. 40 in a manner inappropriate for document production.

Defendants' responded repeatedly to these requests in the form of letters referenced above and by way of Ms. Eichberger's Declaration.  Defendants incorporate by reference the responses contained in and/or attached to this pleading, and provided previously in writing to Plaintiff.  With the exception of the documents produced previously, the requested materials are both Legally Privileged & Confidential and/or contain attorney work-product created after the inception of litigation.  For these reasons, Defendants are not obligated to provide such documents, nor are they obligated to furnish a log to Plaintiff. However, on June 1, 2012, in an abundance of caution, Defendants will provide a log of Legally Privileged & Confidential materials and attorney work-product documents described in Amended Exhibit A (bates stamp number FL-OSB 014926-33), March 21, 2012 Amended Declaration of Ms. Eichberger.

(A)      All documents specifically identified in Attachment A to the March 1 and

March 21, 2012 Eichberger Declaration, as well as all documents concerning, constituting and/or

reflecting those documents, including but not limited to:

(i)      The email sent by Paul Walker to Andrea Rattner on June 29, 2006,

including the "Retirement Plan Documents" contained therein and/or attached thereto, 3/21/12

Eichberger Decl., Ex. A., Tab No. 2;

**Defendants' Response**:  **Defendants object to this Request.  The e-mail sent by Paul**

**Walker to Andrea Rattner on June 29, 2006 will not be produced because it constitutes**

**protected attorney work-product, as it is the communication between a Proskauer Partner**

**and a Proskauer Senior Paralegal.  Moreover, there is no obligation to produce this June**

**29, 2006 e-mail because the work described in this e-mail related to separate litigation and**

**did not bear upon this litigation, which was not filed in the S.D.N.Y. until February 23,**

**2007.  Nevertheless, the documents mentioned in that e-mail have been produced**

**previously and bear bates stamps FL-OSB 000001-70.**

(ii)      The email sent by Andrea Rattner on July 7, 2006, including but not

limited to the "correspondence and Mercer term sheet" contained therein and/or attached thereto,

*see id.*, Tab No. 4;

**Defendants' Response:  Defendants object to this Request.  The July 7, 2006 e-mail**

**sent by Ms. Rattner constitutes protected attorney work-product as it is the exchange of**

**confidential information between Ms. Rattner and other Proskauer counsel.  Moreover,**

**there is no obligation to produce this July 7, 2006 e-mail because the work described in this**

**e-mail related to separate litigation, which did not bear upon this litigation which was not**

**filed in the S.D.N.Y. until February 23, 2007.  Nevertheless, the documents mentioned in**

that e-mail have been produced previously and bear bates stamps FL-OSB 002245-47 and MercerFL 0002732.

(iii)    The email sent by "S. Lewis re pension balance calculation," including any documents contained therein and/or attached thereto, *see id.*, Tab No. 12;

**Defendants' Response**: **Defendants object to this Request. This e-mail will not be produced because it is Legally Privileged & Confidential and Contains Protected Attorney Work-Product in the form of an e-mail exchange between Ms. Lewis and Mr. Sheehan, in-house counsel for Defendants, and Proskauer counsel, concerning documents and information forwarded to Proskauer. Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because, as referenced in Tab No. 12, the e-mail discusses pension cash balance calculation. While there is no document attached to this e-mail, many non-privileged relevant pension cash balance calculations have been produced previously to Plaintiff. Additionally, without waiving the protections of legal privilege and attorney work-product, this e-mail chain contains Ms. Lewis' acknowledgement of the Document Hold Memorandum and her willingness to comply with the Document Hold Memorandum.** ***See*** **FL-OSB 019967.**

(iv)    The "memo with questions re: ESI" distributed to "Foot Locker IT employees on or about November 13, 2009, *see id.*, Tab No. 14, including any documents contained therein and/or attached thereto;

**Defendants' Response**: **Defendants object to this Request. The documents sought here are subject to attorney work-product as stated specifically in the April 24, 2012 letter. Defendants will not produce the actual memoranda requested because it is both Legally Privileged & Confidential and Contains Protected Attorney Work-Product. This**

document contains Defendants counsel's strategy, mental impressions, conclusions, opinions and/or legal theories as to the gathering of ESI for document production. Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because Defendants voluntarily made available 8 of their I.T. personnel for interview by Plaintiff's counsel on March 23, 2012.  During the course of the interview, Plaintiff received answers to their pending document retention questions relating to ESI and any underlying ESI retention policies.

(v)     The email sent by Mr. Sheehan on November 17, 2009, including any documents contained therein and/or attached thereto, *see id.*, Tab No. 16;

**Defendants' Response:  Defendants object to this Request.  The e-mail dated November 17, 2009 will not be produced because it is a Legally Privileged & Confidential communication between Mr. Sheehan, Foot Locker in-house counsel, and Proskauer; the e-mail also Contains Protected Attorney Work-Product as it is an exchange between counsel regarding discovery.  Furthermore, Plaintiff's purported "need" for this e-mail does not outweigh any legal privilege because the document referenced in the e-mail, "Business Records Guidelines With Schedules," has been produced previously as bates stamp number FL-OSB 009769-80.**

(vi)     The email sent by Mr. Salomone on November 23, 2009, including the "Sample communications, pension distributions forms, and offer of further assistance" as well as any other documents contained therein and/or attached thereto, *see id.*, Tab No. 17;

**Defendants' Response:  Defendants object to this Request.  The communication from Mr. Salomone to Ms. Eichberger will not be produced because it is both Legally Privileged & Confidential and Contains Protected Attorney Work-Product as it is an**

exchange between counsel and client regarding discovery.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because the relevant and non-privileged documents referred to in Tab 17 have been produced, as have the legacy pension tables, which were produced previously in native format.

(vii)    The email sent by Mr. Sheehan relaying "information on Camp Hill boxes to Eichberger" on or about December 10, 2009, including any documents contained therein and/or attached thereto, *see id.*, Tab No. 20;

**Defendants' Response:  Defendants object to this Request.  The e-mail from Mr. Sheehan dated December 10, 2009 includes information as to document collection and counsel's internal thought processes.  The e-mail is Legally Privileged & Confidential and Contains Protected Attorney Work-Product.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because the information discussed in this e-mail pertinent to document preservation issues was provided in Tab 20, Amended Exhibit A, Ms. Eichberger's Declaration and has been explained on multiple occasions to Plaintiff, starting with Ms. Eichberger's March 1, 2012 Declaration, through and including Mr. Rumeld's April 24, 2012 letter to Plaintiff's Counsel.  The documents described in Tab 20 are either not relevant or have been produced.**

1. **#13092070 (Camp Hill #164139) reportedly purged/destroyed 9/30/2008.  The document i.d. slip was produced previously as bates stamp FL-OSB 014939.  The documents listed on this slip are irrelevant because they all predate the 1996 Cash Balance Plan conversion.**

2. **#13092065 (Camp Hill #106607) reportedly purged/destroyed 9/30/2008.  This document slip i.d. was produced previously as bates stamp FL-OSB 014941.  These documents are irrelevant because they all deal with Foot Locker's 401(k) plan.**

3. **#13102397 (Camp Hill # 100485) reportedly purged/destroyed 11/20/2008.  This document has been produced previously as FL-OSB 014940.  The documents listed on this slip are irrelevant because they all predate the 1996 Cash Balance Plan conversion.**

4. **# 605692 (Camp Hill # 137676 & 137678 ) reportedly purged/destroyed 11/20/2008.  This document i.d. slip was produced previously as FL-OSB 014942.  The documents referred to on this box i.d. slip were located in the New York Human Resources Department Storage Location and, if relevant and non-privileged, were produced previously by Defendants.**

5. **#13092060 (Camp Hill # 135732) reportedly purged/destroyed 8/28/2009.  This document i.d. slip has been produced as bates stamp number FL-OSB 014938.  These listed documents are irrelevant because they deal with MetLife welfare benefits and all pre-date the Cash Balance Plan conversion.**

6. **#13091712 Not Retained or Not Located.  This box i.d. has been produced previously as FL-OSB 014936.  The documents referred to on this box i.d. slip were located in the New York Human Resources Department Storage Location and, if relevant and non-privileged, were produced previously by Defendants.**

7. **#605709 Not Retained or Not Located.  This box i.d. has been produced previously as FL-OSB 014935.  The documents referred to on this box i.d. slip were located in**

**the New York Human Resources Department Storage Location and, if non-privileged and relevant, were produced previously by Defendants.**

(viii)   The emails sent by "Dennis Sheehan, Pat Peck, Pat Santa Maria, and Richard A. Mazzatesta II, Office Services/Record Retention coordinator," including any documents contained therein and/or attached thereto, *see id.*;

**Defendants' Response:  Defendants object to this Request.  These e-mails will not be produced because they consist of information exchanged between client and counsel in furtherance of the discovery document collection effort.  As such, the e-mails are Legally Privileged & Confidential and Contain Protected Attorney Work-Product.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because the substance of the box i.d. slips identified above in response to RFP No. 40(A)(vii) have been explained and produced multiple times to Plaintiff's Counsel.**

(ix)   The "[r]esponses received from Foot Locker IT department re ESI, etc" on or about December 23, 2009, including any documents contained therein and/or attached thereto, *see id.*, Tab No. 21;

**Defendants' Response:  Defendants object to this Request.  These documents consist of an exchange of Question and Answer materials between Foot Locker personnel and Ms. Eichberger related to document FL-OSB 0017022-25 and a Memorandum created by Ms. Eichberger containing counsel's strategy, mental impressions, conclusions, opinions and/or legal theories as to document collection, storage, and retention of data for discovery purposes.  As such, the e-mails and Memorandum will not be produced because they are both Legally Privileged & Confidential and Contain Protected Attorney Work-Product. *See also* response to RFP No. 40 (A)(iv), which is adopted herein.  Furthermore, Plaintiff's**

purported "need" for this information does not outweigh any legal privilege because the document referenced in this client-counsel exchange was produced previously as FL-OSB 017022-25.

(x)     The "11/14/2009 Memorandum to Footlocker Information Services from N.E. re Storage and Retention of Electronic Data from 1995-2003, Present Day," including any documents contained therein and/or attached thereto, *see id.*, Tab No. 21;

**Defendants' Response**:  **Defendants object to this Request and adopt and reiterate their response to RFP No. 40(A)(ix).  The November 14, 2009 Memorandum is privileged and protected attorney work-product because it was written by Ms. Eichberger concerning discovery issues and it contains her mental impressions, thought processes, and strategy. Notwithstanding these Objections and Responses, Defendants have produced already the "Application Development" document, bearing bates stamp FL-OSB 017022-25.**

(xi)    The "index & box i.d. slips of Camp Hill boxes from 1/7/2010" that "NE ask[ed] to review" on or about January 22, 2010, *see id.*, Tab No. 23;

**Defendants' Response**:  **Defendants object to this Request.  The materials described in Tab 23 are counsel's internal notes and work-product as to document collection and case strategy.  Counsel's creation of discovery related indices of documents for production purposes constitutes Proskauer work-product consisting of the mental impressions and thought processes of Proskauer counsel as they collected and examined documents for purposes of document production.  The information in Tab 23, any indices created by Proskauer, and any box slips examined and/or selected by Proskauer counsel will not be produced because it constitutes counsel's strategy, mental impressions, conclusions, opinions and/or legal theories as to document production.  Furthermore, Plaintiff's**

14

purported "need" for this information does not outweigh any legal privilege because all non-privileged, relevant documents have been produced.

(xii)   The "emails from Sheehan to Eichberger & Lincoln where Sheehan identified 58 more boxes of potentially relevant documents from Camp Hill, PA," including any documents contained therein and/or attached thereto, *see id.*, Tab No. 30;

**Defendants' Response:  Defendants object to this Request.  These e-mails constitute protected attorney work-product and include exchanges between Proskauer counsel and Defendants' in-house counsel.  These e-mails will not be produced because they show Defendants counsel's strategy, mental impressions, conclusions, opinions and/or legal theories as to routine document collection.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because all non-privileged, relevant documents have been produced.**

(xiii)   The "information re ESI post-1998" sent by Sheehan to Eichberger and Lincoln, *see id.*, Tab No. 31.

**Defendants' Response:  Defendants object to this Request.  Information concerning ESI post 1998 is both Legally Privileged & Confidential and Contains Protected Attorney Work-Product.  The privileged document concerns information from a separate case that has nothing to do with this case.  The information will not be produced.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because, as stated in response to RFP No. 40 (A)(iv), on March 23, 2012, Defendants voluntarily produced for questioning eight members of Foot Locker's internal I.T. department.  These eight individuals were interviewed by Plaintiff's counsel as to Foot**

15

Locker's document preservation practices and as to ESI practices.  These persons answered the discovery requests that are propounded herein.

(B)      All documents concerning and/or reflecting the events identified in Attachment A to the March 1 and March 21, 2012 Eichberger Declaration, including but not limited to:

**Defendants' Response:  Plaintiff's RFP No. 40(B) seeks documents concerning and/or reflecting events identified in Attachment A.  Defendants object to this Request because all relevant, non-privileged documents have been provided.  As to any documents concerning and/or reflecting events identified in Attachment A, Defendants will provide a privilege log and have responded in this pleading as to why those documents, to the extent they exist, will not be produced.  Also, Defendants have provided their position as to these documents repeatedly in the past in Declarations and letters to Plaintiff's counsel.  Finally, Defendants have produced all their non-privileged, relevant documents in an OCR format so that Plaintiff can perform and run searches of hard copy and e-documents.**

(i)      The "internal investigation as to plan documents in Proskauer's possession" conducted by Russ Hirschhorn that was completed on July 6, 2006, *see id.*, Tab No. 3;

**Defendants' Response:  Defendants object to this Request.  The internal investigation referred to above will not be the subject of a document production because Mr. Hirschhorn was working as an attorney employed by Proskauer.  His work constitutes protected attorney work-product as to Defendants counsel's strategy, mental impressions, conclusions, opinions and/or legal theories.  Moreover, there is no obligation to produce any documents related to work occurring on July 6, 2006 because the work described**

16

related to separate litigation and did not bear upon this litigation, which was not filed in the S.D.N.Y. until February 23, 2007.

(ii) The efforts made by "Foot Locker employees [Sheilagh] Clarke (NY) & Robert Salomone (WI) [to] collect and retain all substantive e-mails and related documents regarding cash balance plan conversion and communications to participants regarding the same" from February 2007 to present, *see id.*, Tab No. 8;

**Defendants' Response**:  Defendants object to this Request.  Any efforts made by Ms. Clarke, an in-house counsel, and Mr. Salomone, to collect documents constitute protected attorney work-product because both Ms. Clarke and Mr. Salomone were acting at the direction of Proskauer counsel to obtain documents.  Ms. Clarke and Mr. Salomone were engaged in normal document collection efforts at the direction of litigation counsel and their communications with litigation counsel, to the extent memorialized in documents, remain privileged.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because the non-privileged, relevant documents collected at the direction of Proskauer counsel have been produced to Plaintiff.

(iii) The "[b]road collection and review of relevant documents," *see id.*, Tab No. 10;

**Defendants' Response**: Defendants object to this Request.  The document collection work undertaken by Proskauer and Foot Locker are subject to legal privilege and are protected attorney work-product.  To the extent any documents exist, those documents provide Defendants counsel's strategy, mental impressions, conclusions, opinions and/or legal theories.  Furthermore, Plaintiff's purported "need" for this information does not

17

**outweigh any legal privilege because all non-privileged, relevant documents resulting from this document collection work have been produced.**

          (iv)     The "teleconference with Robert Salomone & Sherry Flesses (in Wisconsin)" and in-person meetings with Sheilagh Clarke, Dennis Sheehan, Pat Peck, Julie Bloom, Jeremy Nowak held on or about October 23, 2009, *see id.*, Tab No. 13;

       **<u>Defendants' Response</u>:  Defendants object to this Request.  Tab No. 13 consists of notes taken by Proskauer counsel and a Memorandum created by Proskauer counsel as to the ongoing effort to produce relevant documents and ESI.  This written work product contains counsel's strategy, mental impressions, conclusions, opinions and/or legal theories.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because the non-privileged, relevant documents have been produced as a result of counsel's work-product efforts.**

          (v)     The conference call held "with Foot Locker IT employees re:  ESI" on or about November 13, 2009, *see id.*, Tab No. 14;

       **<u>Defendants' Response</u>: Defendants object to this Request.  Tab No. 14 consists of a Memorandum created by Proskauer counsel as to the ongoing effort to produce relevant documents and ESI.  This written work product contains counsel's strategy, mental impressions, conclusions, opinions and/or legal theories.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because the non-privileged, relevant documents have been produced as a result of counsel's work-product efforts.**

          (vi)     The interviews of potential witnesses and solicitation of potentially responsive documents held during the week of November 16, 2009, *see id.*, Tab No. 15;

**Defendants' Response**:  Defendants object to this Request.  Tab No. 15 consists of a calendar entry reflecting a conference call with Mr. Sheehan and Ms. Clarke that occurred on November 17, 2009.  There are no other documents associated with Tab 15.  The Proskauer work product accomplished during the week of November 16, 2009 and thereafter has resulted in the production of all non-privileged, relevant documents during the course of this litigation.

   (vii) The receipt of documents from Clarke on November 25, 2009, *see id.*, Tab No. 18;

**Defendants' Response**:  Defendants object to this Request.  Ms. Clarke is one of Defendants' in-house counsel and any work done and/or communications by Ms. Clarke and Proskauer counsel are both legally privileged and confidential and constitute protected attorney work-product.  Nevertheless, the non-privileged, relevant documents that are the subject of Tab 18 received from Ms. Clarke and others, were produced already to Plaintiff, as FL-OSB 011914-30; FL-OSB 005511-62.

   (viii) The interviews of witnesses and identification of potentially relevant documents at the Foot Locker corporate office in New York City, as well as the meetings and teleconferences held, on or about December 7, 2009, *see id.*, Tab No. 19;

**Defendants' Response**:  Defendants object to this Request.  Tab No. 19 consists of a calendar entry reflecting meetings in New York between Proskauer counsel and Foot Locker principals.  There are no other documents associated with Tab 19.  The Proskauer work product accomplished during these meetings and thereafter resulted in the production of all non-privileged, relevant documents during the course of this litigation. The work done by counsel to interview witnesses and identify potentially relevant

**documents is Legally Privileged & Confidential and constitutes protected attorney work-product, consisting of counsel's mental impression and case strategy.**

(ix)    The "[m]eeting with clients about collection [of] documents, ESI and other information" held on or about January 7, 2010, *see id.*, Tab No. 22;

**Defendants' Response: Defendants object to this Request. This meeting with clients and counsel' communications, notes, and Memorandum resulting from these client meetings are legally privileged and confidential and constitute protected attorney work-product because any documents, to the extent they exist, because they reveal the mental impression and strategy discussed by in-house counsel and Proskauer counsel. All relevant and non-privileged documents resulting from the work-product carried out by Proskauer counsel have been produced previously to Plaintiff's Counsel.**

(x)    The efforts to "identify boxes of potentially relevant information" by Eichberger, Lincoln and Quayhagen at Camp Hill, PA on or about January 26, 2010, *see id.*, Tab No. 25;

**Defendants' Response: Defendants object to this Request. The materials constituting Tab 25 consist of documents created by Proskauer counsel as to document review and collection. The Memoranda and indices written by Proskauer personnel to identify relevant documents for production in this litigation are both legally privileged and confidential and subject to attorney work-product protection. These writings reflect the mental impressions of counsel and their strategy. The work done to identify relevant information is independent of any document preservation issues and is work-product conduct of attorneys reviewing documents. All relevant and non-privileged documents**

**resulting from this Proskauer work-product have been produced previously to Plaintiff's Counsel.**

(xi)     The "[c]ommunicat[ion(s)] with client regarding collecting hard copy documents in storage" that took place on or about January 27, 2010, *see id.*, Tab No. 26;

**Defendants' Response:  Defendants object to this Request.  The communications identified in Tab 26 are protected from disclosure for the same reasons as stated in RFP No. 40(B)(x).**

(xii)     Eichberger and Lincoln's efforts to collect documents and/or investigate the destruction of documents at Foot Locker's headquarters on or about January 28, 2010, *see id.*, Tab No. 27;

**Defendants' Response:  Defendants object to the characterization "destruction of documents …" as that language does not appear in Tab 27.  Tab No. 27 consists of a calendar entry reflecting Proskauer counsel travel to Defendants' New York Headquarters. There are no other documents associated with Tab 27.  Proskauer work product accomplished during this meeting and thereafter has resulted in the production of all non-privileged, relevant documents during the course of this litigation.**

(xiii)     The "request[]" for additional boxes "for processing" on or about January 29, 2010, *see id.*, Tab No. 29;

**Defendants' Response:  Defendants object to this Request.  The e-mails referred to in Tab 29 are both legally privileged and confidential and protected attorney work-product and will not be produced.  The e-mails consist of confidential communications between in-house counsel and Proskauer counsel dealing with the collection of discoverable documents.  Tab 29 also consists of a Proskauer created index reflecting document review.**

21

These e-mails and the Proskauer created index will not be produced because they reflect counsel's strategy, mental impressions, conclusions, opinions and/or legal theories.  Insofar as the subject matter of the e-mails and the index concern relevant documents, all relevant and non-privileged documents have been produced to Plaintiff's Counsel previously.

       (xiv)   The "information about boxes identified" gathered during February 2010, *see id.*, Tab No. 30; and

**Defendants' Response**:  Defendants object to this Request.  The e-mails referred to in Tab 30 are both legally privileged and confidential and protected attorney work-product that will not be produced.  The e-mails consist of confidential communications between in-house counsel and Proskauer counsel as to the collection and review of relevant and non-privileged documents.  Insofar as the subject matter of the e-mails concern relevant and non-privileged documents, all of those documents have been produced to Plaintiff's Counsel previously.

       (xv)   The meeting with Alison Brecher held on or about April 20, 2010, *see id.*, Tab no. 36.

**Defendants' Response**:  Defendants object to this Request.  Tab 36 is an e-mail conveying counsel's mental impressions and strategy after meeting with Ms. Brecher.  This e-mail will not be produced because it consists of notes conveying the mental impressions and work performed by Proskauer counsel.  No documents are associated with the e-mail referenced in Tab 36.

       (C)   To the extent not already produced in response to subparts A through B of this request, all formal and/or informal litigation holds and any and all documents concerning and/or reflecting Defendants' generation and issuance of such formal and/or informal litigation hold(s)

and/or instructions by which potentially relevant documents may have been preserved, as well as the scope of such hold(s) and/or instructions; the individuals, department and/or entities to whom and/or which such hold(s) and/or instructions were issued; and any steps taken to enforce such hold(s) and/or instructions and/or to verify compliance with such hold(s) and/or instructions. This includes but is not limited to:

**Defendants' Response: Defendants object to this Request. Defendants already have provided the Document Hold Memorandum (FL-OSB 014944-46) and will make Mr. Sheehan available for a Fed. R. Civ. Pro. 30(b)(6) deposition as to relevant issues concerning the Document Hold Memorandum. Defendants have responded further to this Request in their April 24, 2012 letter. Subject to this Objection, and without waiving any legal privilege, Defendants produce FL-OSB 019967 consisting of an e-mail chain from Mr. Sheehan to Foot Locker personnel attaching the Document Hold Memorandum (FL-OSB 014944-46), and an e-mail response from Ms. Lewis indicating that the Document Hold Memorandum has been forwarded to her staff.**

(i)     Any and all documents concerning and/or reflecting Defendants' "distribut[ion] [of] a formal litigation hold memorandum . . . specifically addressed to this Action, including but not limited to any "Distribution List" and/or any other documents indicating to whom the "Confidential Litigation Hold Memo" and/or "October 8, 2009 Memo" was distributed with respect to this action on October 8, 2009 or at any other time, *see* 3/21/12 Eichberger Decl. ¶ 16; 3/21/12 Eichberger Decl., Ex. A, Tab No. 11;

**Defendants' Response: Defendants adopt and reiterate their Objection and Response set forth in RFP No. 40 (C).**

(ii)    Any and all documents concerning and/or reflecting the fact that Defendants' "failure to generate a document hold memorandum at the outset of this lawsuit was inadvertent," *see* Defs. 3/21/12 Ltr. at 2, including but not limited to any documents concerning and/or reflecting Defendants' and/or defense counsel's realization and/or recognition that a litigation hold notice had not been issued at any time prior to October 8, 2009;

**Defendants' Response:  Defendants object to this Request.  The document request as framed is more properly expressed as an Interrogatory.  Defendants' document production and interaction with Plaintiff's Counsel during the discovery process demonstrates their good faith.  The repeated efforts to conduct a dialogue with Plaintiff as to what occurred is further evidence.  Plaintiff may also question Defendants' Fed. R. Civ. Pro. 30(b)(6) witness as to this issue in the future.  No documents specifically address the issue of inadvertence.**

(iii)    Any and all documents concerning and/or reflecting formal and/or informal instructions and/or "document holds [] issued by Foot Locker for other employment-related litigation to persons who may also have had information potentially relevant to this action, *see* 3/21/12 Eichberger Decl. ¶ 16, including but not limited to the document hold memos distributed with respect to *Cortes v. Foot Locker*, No. 06-cv-01046 (S.D.N.Y.) (AKH) on February 15 and/or 16, 2006, *see* 3/21/12 Eichberger Decl., Ex. A, Tab No. 1, and with respect to *Patino v. Foot Locker Retirement Plan, et al.*, No. 06-civ-4879 (LBS/FM), including any documents indicating and/or concerning the distribution of those memos, such as any list constituting and/or concerning to whom such memos were distributed;

**Defendants' Response:  Defendants object to this Request.  Defendants have declined repeatedly to produce the document hold Memorandum in *Cortes v. Foot Locker* and in other cases because these hold Memoranda are not relevant as to this matter.  *See***

**Defendants' April 24, 2012 correspondence.  Moreover, Defendants are under no obligation to produce any documents related to the *Patino* matter as it was filed and resolved before this case was filed.  Defendants have produced already the Document Hold Memorandum and Defendants' document retention policies in this case and have produced non-privileged documents relevant to this.  Additionally, Defendants are making Mr. Sheehan available for a Fed. R. Civ. Pro. 30(b)(6) deposition on document hold issues related to this action.**

(D)     To the extent not already produced in response to subparts A through C of this request, any and all documents concerning and/or reflecting any communications with third-party consultants, recordkeepers, and/or administrators with respect to preservation of hard-copy documents and ESI potentially relevant to this action, including but not limited to communications with Mercer by which "Mercer was made aware of the *Osberg* litigation shortly after the November 30, 2006 complaint was filed," *see* Defs. 4/2/12 Ltr. at 2, and communications regarding the existence of, search for, and/or loss of documents responsive to Plaintiff's discovery requests served on Defendants and/or Plaintiff's May 14, 2010, subpoena served on Mercer.

**<u>Defendants' Response</u>:  Defendants object to this Request.  Defendants have no obligation to contact Mercer or provide a Document Hold Memorandum to Mercer because Mercer was not Defendants' agent.  Any communication related to this litigation by Proskauer or Foot Locker in-house counsel with third parties is itself legally privileged and confidential and protected by attorney work-product.  Moreover, as Plaintiff knows, (*see* Letter dated May 31, 2012 from Carla Walworth to Matthew Norgard), on July 20, 2006, Mercer put in place a legal hold notice related to the *Patino* Litigation, covering all**

**aspects of the Cash Balance Plan conversion.  Mercer's hold has remained in place continuously since 2006.**

      (E)     To the extent not already produced in response to subparts A through D of this request, any and all documents concerning and/or reflecting the manner in which documents in the possession, custody, or control of Defendants, defense counsel, and/or any third party that may have had physical custody of hard-copy documents potentially relevant to this action were retained and/or destroyed by such entities, whether such documents were stored on-site or off-site and whether or not according to formal retention policies, as well as any and all efforts to suspend, halt and/or modify such retention and/or destruction.  This request includes but is not limited to the manner in which "boxes of hard-copy documents in [Defendants'] storage could be retained on a different schedule [than that set forth in the Business Records Guidelines] as per the designation set forth on the box i.d. slip," *see* 3/21/12 Eichberger Decl. ¶ 18(a)-(b).

      **<u>Defendants' Response</u>:  Defendants object to this Request.  Defendants adopt and re-aver their prior responses to RFP No. 40 in its entirety, and also adopt and re-aver the responses Defendants made in their Declarations and discovery related correspondence. Defendants further object because Request No. 40(E) is over-broad and burdensome.  The Request also is imprecise because of the scope of the Request.  Defendants have produced information previously as to how documents were retained and Defendants' policies as to document retention.  Defendants have not located non-privileged, additional documents responsive to this Request.**

      (F)     To the extent not already produced in response to subparts A through E of this request, any and all documents concerning and/or reflecting Defendants' and/or defense counsel's efforts to identify and collect hard-copy documents potentially relevant to this action in

the possession, custody, or control of Defendants, defense counsel, and/or any third party that may have had physical custody of hard-copy documents potentially relevant to this action and/or efforts to determine what hard-copy documents potentially relevant to this action had been destroyed following the commencement of litigation, including but not limited to:

**Defendants' Response:  Defendants object to this Request.  Defendants adopt and re-aver all prior responses to RFP No. 40 in response to RFP No. 40(F).**

(i)    Any and all documents concerning and/or reflecting what potentially relevant hard-copy documents were collected in 2006, *see* 3/21/12 Eichberger Decl. ¶ 5;

**Defendants' Response:  Defendants object to this Request.  As stated in Ms. Eichberger's Declaration, Paragraph 5, some relevant documents were collected and produced to Plaintiff's Counsel as part of Defendants' Motion papers.  Any remaining non-privileged, relevant documents identified in Paragraph 5 of Ms. Eichberger's Declaration have been produced since that time.**

(ii)    Any and all documents concerning and/or reflecting "interview[s] [of] individuals, both former and current employees, to determine where potentially relevant information [in hard-copy form] . . . may be located," *see id.* ¶ 13, including but not limited to interviews and/or discussions held with witnesses deposed in this Action;

**Defendants' Response:  Defendants object to this Request.  This Request duplicates what has been asked for previously in this pleading.  Defendants adopt and re-aver their prior responses set forth in this pleading and the information provided to Plaintiff's Counsel during the discovery process, including letters and Declarations.  All of the work sought in this request is either Legally Privileged & Confidential or Protected Attorney Work-Product for the reasons stated previously in this pleading.  All relevant and non-**

**privileged documents responsive to Plaintiff's proper discovery requests have been produced already.**

(iii)    Any and all documents concerning and/or reflecting Defendants' efforts to collect boxes of documents potentially relevant to this Action, to "retriev[e] boxes stored off-site," and/or "to collect any boxes that may contain potentially relevant information," *see id.* ¶ 10, including but not limited to any investigation that "rel[ied] on the information contained on the outside of [] boxes," *see* Defs. 3/21/12 Ltr. at 3, and documents concerning and/or reflecting Defendants' policies, practices, and/or procedures with respect to the storage of documents in boxes;

**Defendants' Response:  Defendants object to this Request.  This Request duplicates what has been asked already in this pleading.  Defendants adopt and re-aver its prior responses set forth in this pleading and the information provided to Plaintiff's Counsel during the discovery process, including letters and Declarations.  All of the work sought in this request is either Legally Privileged & Confidential or Protected Attorney Work-Product for the reasons stated previously in this pleading.  All relevant and non-privileged documents responsive to Plaintiff's proper discovery requests have been produced already. To the extent that non-objectionable discoverable issues remain as to this document preservation issues, Mr. Sheehan will testify as a Fed. R. Civ. Pro. 30(b)(6) witness.**

(iv)    Any and all documents concerning and/or reflecting Defendants' efforts to otherwise collect documents potentially relevant to this action, including but not limited to Defendants' review of "every file cabinet, box, and shelf in the Human Resources Department's storage location" in New York, *see* 3/21/12 Eichberger Decl. ¶ 10, and documents concerning and/or reflecting Defendants' policies, practices, and/or procedures with respect to the storage

and/or destruction of documents on-site at any location at which hard-copy documents may have been stored;

**Defendants' Response**:  Defendants object to this Request.  This Request duplicates what has been asked already in this pleading.  Defendants adopt and re-aver its prior responses set forth in this pleading and the information provided to Plaintiff's Counsel during the discovery process, including letters and Declarations.  All of the work sought in this request is either Legally Privileged & Confidential or Protected Attorney Work-Product for the reasons stated previously in this pleading because the work described in Declaration Paragraph 10 was accomplished by Proskauer counsel or Foot Locker in-house counsel.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because all relevant and non-privileged documents responsive to Plaintiff's proper discovery requests have been produced already as result of the privileged work accomplished by Proskauer counsel and in-house counsel.

(v)     Any and all documents concerning and/or reflecting the "index or box identification slip[s]" used by Defendants to keep "track of multiple boxes of hard-copy documents" at the three locations at which an such index or box i.d. slips were used, including but not limited to those box i.d. slips and/or indices that Defendants "identif[ied]" as being associated with boxes "possibl[y] [] containing potentially relevant documents" and/or boxes that were collected because their "box i.d. slips indicated that they may contain potentially relevant documents," *see id.* ¶¶ 7-9, as well as all documents concerning and/or reflecting Defendants' policies, practices, and/or procedures with respect to the use of box i.d. slips;

**Defendants' Response**:  Defendants object to this Request.  Defendants adopt the position taken in their April 24, 2012 letter.  Plaintiff is not entitled to all

the box i.d. slips reviewed by Defendants in their document collection efforts.  All of these materials are clearly within the core of the work product protections as they reflect the mental impressions of counsel in preparing its defense of this case. Counsel's examination of box i.d. slips relate to defense counsel's efforts and strategy to collect documents relevant to the case and to respond to discovery requests, and not specifically to efforts to preserve documents or investigate the potential loss of documents.  Defendants have produced already the box i.d. slips pertaining to the documents that have been identified as potentially lost or destroyed during the pendency of the litigation.  *See* RFP No. 40(A)(vii). Moreover, the production of these box i.d. slips would not relate to the document preservation issues since boxes not destroyed, and boxes destroyed before the onset of the litigation would not be relevant to that inquiry.  Rather, such an inquiry would relate to Defendants' efforts to gather documents responsive to discovery generally, which is not discoverable.  Notwithstanding the Objections stated above, and without prejudice thereto, Defendants agree to make the existing relevant and non-privileged box i.d. slips available for Plaintiff's inspection at Proskauer's New York Office subject to negotiations between the parties.

(vi)     Any and all documents concerning and/or reflecting Defendants' "review[] of the index and corresponding box i.d. slips [and] the box i.d. slips affixed to the thousands of boxes that were stored at Camp Hill," *see id.* ¶ 11, including but not limited to any documents such as an index or log used to assist in that review and documents concerning and/or reflecting Defendants' policies, practices, and/or procedures with respect to storage and/or destruction of documents at Camp Hill;

**Defendants' Response**:  Defendants object to this Request.  The Request above is unduly burdensome as it would require the removal of all box i.d. slips from thousands of boxes stored at Camp Hill.  Moreover, this burdensome exercise would be irrelevant because the relevant and non-privileged box i.d. slips are those identified in response to RFP No. 40(f)(v).  Moreover, the conduct referred to in Paragraph 11 of Ms. Eichberger's Declaration is protected attorney work-product because it consisted of counsel's actual review of documents housed in boxes located in Camp Hill.  Finally, as a result of the legally privileged work performed by counsel, Defendants have produced all relevant and non-privileged documents.  Notwithstanding the Objections stated above, and without prejudice thereto, Defendants adopt and re-aver the response in RFP No. 40 (F)(v).

      (vii)   Any and all documents concerning and/or reflecting Defendants' determination that, "[w]ith respect to hard-copy documents, Defendants learned that some boxes that could have contained potentially relevant information could have been purged/destroyed prior to 2006 . . . because the retention date for the hard copy documents expired prior to 2006," *see id.* ¶ 18(c), including but limited to any documents setting forth the date upon which potentially relevant documents and/or boxes containing documents potentially relevant to this Action were destroyed and/or concerning and/or reflecting Defendants' investigation to determine whether such boxes were actually destroyed on a particular date, whether or not such destruction took place according to Defendants' retention policies, practices, and/or procedures;

**Defendants' Response**:  Defendants object to this Request.  Defendants adopt and reiterate the responses provided in the March 1st and March 21st Declarations and the letters written to Plaintiff's Counsel as to these discovery issues.  Notwithstanding this Objection, no non-privileged documents exist.

(viii)   Any and all documents concerning and/or reflecting Defendants' "investigat[ion] [of] the retention of potentially relevant information and/or documents, including whether any documents and/or information were lost or destroyed between November 30, 2006 (the date on which Plaintiff filed his first complaint against Foot Locker, Inc.) and October 8, 2009 (the date on which the litigation hold [issued with respect to this Action] was distributed," *see id.* ¶ 17;

**Defendants' Response:  Defendants object to this Request.  In response to this Request, Defendants adopt and reiterate their Objections and Responses in this pleading, their Declarations, and their correspondence with Plaintiff's Counsel as to discovery issues. Notwithstanding this Objection, no non-privileged documents exist.**

(ix)   Any and all documents concerning and/or reflecting Defendants' determination that "certain boxes of hard-copy documents sent off-site by various personnel in Defendants' Human Resources Department were allegedly destroyed in 2008 and 2009, even though these boxes were designated to be purged prior to the commencement of the Action," *see id.* ¶ 18(d), including but not limited to Defendants' determination that no other documents were and/or may have been destroyed following the commencement of litigation apart from those stored in boxes associated with the box i.d. slips provided in Exhibit D-E to the 3/21/12 Eichberger Decl.;

**Defendants' Response:  Defendants object to this Request.  In response to this Request, Defendants adopt and reiterate their Objections and Responses in this pleading, their Declarations, and their correspondence with Plaintiff's Counsel as to discovery issues. Notwithstanding this Objection, no non-privileged documents exist.**

32

(x)     Any and all documents concerning and/or reflecting Defendants'
determination that no documents relevant to this action were destroyed following the
commencement of litigation, including but not limited to Defendants' determination that "[a]s to
the boxes allegedly destroyed in 2008 and 2009, Defendants . . . ascertained that those boxes did
not contain potentially relevant information that was not otherwise available," *see id.* ¶ 18(e),
that the all documents contained in the boxes associated with the box i.d. slips Bates-stamped
FL-OSB 014935, FL-OSB 014936, and FL-OSB 014942 were located and produced to Plaintiff,
*see* Defs. 3/21/12 Ltr. at 4, and/or that "any conceivably relevant documents" stored in boxes
and/or any other location "were in fact located," Defs. 4/2/12 Ltr. at 3;

**Defendants' Response:  Defendants object to this Request.  In response to this
Request, Defendants adopt and reiterate their Objections and responses in this pleading,
their Declarations, and their correspondence with Plaintiff's Counsel as to discovery issues.
Defendants further adopt and reiterate the response made to RFP 40(A)(vii).
Notwithstanding this Objection, no non-privileged documents exist.**

(xi)     Any and all documents concerning and/or reflecting Defendants'
determination that no documents relevant to this action were destroyed following the
commencement of litigation, including but not limited to Defendants' determination that boxes
associated with the box i.d. slips Bates-stamped FL-OSB 012049-51 contained only documents
that "are clearly not relevant" to this Action, Defs. 3/21/12 Ltr. at 5, and/or that "the contents of
[] boxes that are missing or were destroyed were not relevant because they did not implicate
Cash Balance Plan issues or were from time periods before 1995," Defs. 4/2/12 Ltr. at 3.

**Defendants' Response:  Defendants object to this Request.  In response to this
Request, Defendants adopt and reiterate their Objections and Responses in this pleading,**

**their Declarations, and their correspondence with Plaintiff's Counsel as to discovery issues.
Defendants specifically adopt and reiterate their Response to RFP No. 40A(vii).
Notwithstanding this Objection, no non-privileged documents exist.**

(G)     To the extent not already produced in response to subparts A through F of this
request, any and all documents concerning and/or reflecting Defendants' and/or defense
counsel's efforts to collect potentially relevant ESI in the possession, custody or control of
Defendants, defense counsel, and/or any third party that may have had physical custody of ESI
potentially relevant to this action and/or to investigate what potentially relevant ESI had been
destroyed following the commencement of litigation, including but not limited to:

**Defendants' Response:  Defendants object to this Request.  In response to this
Request, Defendants adopt and reiterate their Objections and responses in this pleading,
their Declarations, and their correspondence with Plaintiff's Counsel as to discovery issues.
Notwithstanding this Objection, no non-privileged documents exist.  Defendants have
continued their efforts to work with Plaintiff as to the further production of relevant, non-
privileged ESI and that production is ongoing.**

(i)     Any and all documents concerning and/or reflecting how and what
potentially relevant electronically-stored documents were collected in 2006, *see* 3/21/12
Eichberger Decl. ¶ 5;

**Defendants' Response:  Defendants object to this Request.  In response to this
Request, Defendants adopt and reiterate their Objections and responses in this pleading,
their Declarations, and their correspondence with Plaintiff's Counsel as to ESI discovery
issues.  Notwithstanding this Objection, no non-privileged documents exist.  Defendants**

have continued their efforts to work with Plaintiff as to the further production of relevant, non-privileged ESI and that production is ongoing.

(ii)     Any and all documents concerning and/or reflecting Defendants' policies, practices, and/or procedures with respect to retention and/or destruction of electronically-stored documents from 1994 to the present.

**Defendants' Response: Defendants object to this Request. In response to this Request, Defendants adopt and reiterate their Objections and responses in this pleading, their Declarations, and their correspondence with Plaintiff's Counsel as to ESI discovery issues. Defendants object to the temporal scope of this Request as it seeks documents prior to the time of the Cash Balance Plan conversion. Notwithstanding these Objections and Responses, Defendants have produced relevant, non-privileged documents describing Defendants' policies. *See* FL-OSB 009769-80.**

(iii)     Any and all documents concerning and/or reflecting "interview[s] [of] individuals, both former and current employees, to determine where potentially relevant [electronically-stored] information . . . may be located," *id.* ¶ 13;

**Defendants' Response: Defendants object to this Request. Any documents counsel may have created concerning interviews of individuals constitute protected attorney work-product because they reflect Defendants' counsel's strategy, mental impressions, conclusions, opinions and/or legal theories. In response to this Request, Defendants adopt and reiterate their Objections and Responses in this pleading, their Declarations, and their correspondence with Plaintiff's Counsel as to ESI discovery issues. Finally, Plaintiff's purported "need" for this information does not outweigh any legal privilege because ESI documents have been and are being produced pursuant to agreements reach by the parties.**

(iv)    Defendants' "collect[ion] [of] diskettes that were in [the four locations at which potentially relevant hard-copy documents could be stored]," *id.* ¶ 12, and/or at any other locations from which diskettes were collected;

**Defendants' Response:  Defendants object to this Request.  Defendant's Counsel made Plaintiff's Counsel aware of information involving diskettes in a conference call on March 25, 2010 and then again in Ms. Eichberger's Declaration of March 1, 2012. Additionally, Defendants adopt and reiterate their Objections and responses in this pleading, their Declarations, and their correspondence with Plaintiff's Counsel as to ESI discovery issues.  If any documents exist as to the collection of these diskettes, those documents would constitute attorney work-product for the reasons explained previously in this pleading and in past communications from Defendants to Plaintiff.  Defendants know of no non-privileged relevant documents responsive to this Request.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because on March 23, 2012, Defendants' counsel voluntarily made eight members of Defendants' I.T. group available to respond to questions from Plaintiff's Counsel, including questions about these diskettes.**

(v)    Any and all documents concerning and/or reflecting Defendants' investigation of whether potentially relevant ESI is stored on Defendants' LAN, WAN, shared drives, and/or any other active ESI source, including but not limited to the fact that "from January 1, 1995 to 1998, [Defendants' ESI] resided on a mainframe computer system that was gradually replaced with personal DOS-based computers between 1996 and 1998"; that "[d]uring the course of this DOS-based conversion, ESI was not converted to the new DOS-based

computer system unless it was specifically designated for conversion"; and that "[e]-mails were not designated for this conversion," *id.* ¶ 18(f);

**Defendants' Response**:  **Defendants object to this Request.  In response to this Request, Defendants adopt and reiterate their Objections and Responses in this pleading, their Objections and Responses to Plaintiff's Second Set of Discovery Requests, their Declarations, and their correspondence with Plaintiff's Counsel as to ESI discovery issues. Plaintiff was placed on notice of ESI issues in Ms. Eichberger's Declaration of March 1, 2012.  Plaintiff's counsel was once again put on notice as to all ESI issues as early as March 25, 2010.  Further, on March 23, 2012, Defendants voluntarily produced for questioning eight members of Foot Locker's internal I.T. department.  These eight individuals were interviewed by Plaintiff's counsel as to Foot Locker's document preservation practices and as to ESI practices.  Additionally, in response to Plaintiff's request to search home drives, shared drives, and e-mails, Defendants have produced information about all of these systems for the custodians Plaintiff identified.**

(vi)    Any and all documents concerning and/or reflecting Defendants' backup tapes, including but not limited to retention and/or recycling periods of such tapes and Defendants' "investigation [that] disclosed that backup tapes of ESI from as early as 1998 were created and stored of-site, but were routinely replaced and generally retained no more than six years as per the Defendants' Corporate Computing Guide and Business Records Guidelines," *id.* ¶ 18(g), and Defendants' determination that such backup tapes are no longer in existence;

**Defendants' Response**:  **Defendants object to this Request.  Defendants object because the search of all backup tapes is unduly burdensome and Defendants lack backup tapes requested by Plaintiff.  Defendants informed Plaintiff repeatedly that they lack**

backup tapes.  This was disclosed as early as a March 2010 call with Mr. Gottesdiener and in Ms. Eichberger's March 1, 2012 Declaration.  On March 23, 2012, Defendants voluntarily produced for questioning eight members of Foot Locker's internal I.T. department.  These eight individuals were interviewed by Plaintiff's counsel as to Foot Locker's document preservation practices and as to ESI practices.  Defendants also produced a log showing the absence of backup tapes.  *See* FL-OSB 017427-78.

      (vii)    Any and all documents concerning and/or reflecting Defendants' determination that no ESI of employees who terminated employment prior to the time Plaintiff's first complaint was filed in 2006 was still in existence at the time Plaintiff filed that complaint, *see id.* ¶ 18(h), including but not limited to any documents concerning and/or reflecting policies concerning the retention and/or destruction of ESI following the termination of an individuals status as an employee of Defendants;

**Defendants' Response**:  **Defendants object to this Request.  Any information obtained as to ESI of terminated employees is covered by attorney work-product and consists of interviews conducted by counsel.  As of March 1, 2012, Plaintiff was on notice of the facts stated in Paragraph 18(h) of Ms. Eichberger's Declaration.  On March 23, 2012, Defendants voluntarily produced for questioning eight members of Foot Locker's internal I.T. department.  These eight individuals were interviewed by Plaintiff's counsel as to Foot Locker's document preservation practices and as to ESI practices.  Plaintiffs were on notice as to this issue prior to March 23, 2012 and could have asked Foot Locker I.T. personnel further questions as to this issue.  Defendants have and are producing non-privileged, relevant ESI for terminated employees, where available.**

(viii)   Any and all documents concerning and/or reflecting Defendants' interviews of "individuals who were still employed when Plaintiff's first complaint was filed in 2006" that resulted in Defendants learning "that none of those individuals designated any ESI potentially relevant to this Action as 'to be saved' at the time of the DOS-based conversion between 1996 and 1998," *id.* ¶ 18(i);

**Defendants' Response:  Defendants object to this Request.  Any interviews referred to above were conducted by counsel and the work performed by counsel is Legally Privileged & Confidential and consists of protected attorney work-product because it consists of counsel's strategy, mental impressions, conclusions, opinions and/or legal theories.  Furthermore, Plaintiff's purported "need" for this information does not outweigh any legal privilege because as of March 1, 2012, Plaintiff was on notice of the facts stated in Paragraph 18(i) of Ms. Eichberger's Declaration.  On March 23, 2012, Defendants voluntarily produced for questioning eight members of Foot Locker's internal I.T. department.  These eight individuals were interviewed by Plaintiff's counsel as to Foot Locker's document preservation practices and as to ESI practices.  Plaintiffs were on notice as to this issue prior to March 23, 2012 and could have asked Foot Locker I.T. personnel further questions as to this issue.  Moreover, Plaintiff's Counsel began taking depositions of Defendants' witnesses after the March 1, 2012 Eichberger Declaration was served.**

(H)   To the extent not already produced in response to subparts A through G of this request, any and all documents concerning and/or reflecting defense counsel's efforts to collect hard-copy and ESI in Proskauer's physical custody, including but not limited to:

**Defendants' Response**:  Defendants object to this Request.  This request is duplicative of prior requests and Defendants adopt and reiterate their prior responses.

        (i)     The collection of "documents related to the Foot Locker Retirement Plan … from the files of Andrea Rattner and other attorneys with responsibility for representing Foot Locker (including but not limited to those from off-site storage)," *id.* ¶ 14;

**Defendants' Response**:  Defendants object to this Request.  Work done to collect Proskauer documents is subject to work-product protections.  Defendants adopt and re-aver their prior responses and reference specifically the response to RFP No. 40(A)(i),(ii).  Moreover, all relevant, non-privileged documents from Ms. Rattner's file have been produced to Plaintiff.  Finally, Defendants have made Ms. Rattner available for deposition and have produced voluntarily Philip Wisoff, Chief Information Officer of Proskauer Rose LLP to respond to Plaintiff's questions as to Proskauer document retention.

        (ii)    The "specific instructions not to destroy any records housed under the client numbers for Foot Locker" issued by Ms. Rattner, Defs. 4/2/12 Ltr. at 2;

**Defendants' Response**:  Defendants object to this Request.  Any instructions communicated by or through Ms. Rattner are subject to work-product protection.  Defendants adopt and reiterate the response to RFP No. 40(H)(i).  All relevant, non-privileged documents in Proskauer's files have been produced to Plaintiff.

    (I)     To the extent not already produced in response to subparts A through H of this request, any and all documents concerning and/or reflecting any other efforts to collect documents and/or to investigate what documents had been destroyed during the course of this litigation.

**Defendants' Response:  Defendants object to this Request.  In response to this request, Defendants adopt and reiterate their responses to RFP No. 40, and adopt by reference the Eichberger Declarations and the letters sent to Plaintiff's Counsel as to discovery issues.**

DATED:  May 31, 2012                     By:      */s/ Howard Shapiro*

                                         Myron D. Rumeld (MR-3941)
                                         Bridgit M. DePietto (BD-1110)
                                         Howard Shapiro (*admitted pro hac vice*)
                                         Robert Rachal (*admitted pro hac vice*)
                                         Nicole A. Eichberger (*admitted pro hac vice*)
                                         Page W. Griffin (*admitted pro hac vice*)
                                         Proskauer Rose LLP
                                         Eleven Times Square
                                         New York, New York 10036-8299
                                         Telephone: 212.969.3000
                                         Facsimile: 212.969.2900

                                         *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 31st day of May, 2012, I served a copy of Defendants' Objections and Responses to Plaintiff's Fourth Set of Discovery Requests via Electronic Mail upon all counsel of record.


<u>/s/ Howard Shapiro</u>
Howard Shapiro

**From:**      Dennis Sheehan [dsheehan@footlocker.com]

**Sent:**      Tuesday, April 03, 2012 2:00 PM

**To:**        Eichberger, Nicole

**Subject:**   URGENT - Osberg v. Foot Locker Retirement Plan

**Attachments:** HoldNotice-Osberg.DOC.tg.zip

Nici: See Sue's note to me right after she received the hold notice. She has confirmed to me that everyone on her staff, Sherry included, were directed to comply with the notice.

----- Forwarded by Dennis Sheehan/COR/NYO/US/footlocker on 04/03/2012 02:57 PM -----

| | |
|---|---|
| From: | Susan Lewis/COR/MLW/US/footlocker |
| To: | Dennis Sheehan/COR/NYO/US/footlocker@flnet |
| Date: | 10/08/2009 04:15 PM |
| Subject: | Re: URGENT - Osberg v. Foot Locker Retirement Plan |

I have read the document below and will comply.  I am forwarding to my staff to make sure they too comply, I will have them comfirm with me only unless you want or need them to respond to you directly.

Susan Lewis
Sr. Manager - Benefits/Store HR Data Admin HROC
414/357-4088

| | | |
|---|---|---|
| | To | Julie Blume/COR/NYO/US/footlocker@flnet, Marie Campbell/COR/NYO/US/footlocker@flnet, Sheilagh Clarke/COR/NYO/US/footlocker@flnet, Susan Lewis/COR/MLW/US/footlocker@flnet, Camilla Martiniello/COR/NYO/US/footlocker@flnet, Jeremy Nowak/COR/NYO/US/footlocker@flnet, Pat Peck/COR/NYO/US/footlocker@flnet, Robert Salomone/COR/MLW/US/footlocker@flnet, Nancy Teitelbaum/FTL/NYO/US/footlocker@flnet |
| **Dennis Sheehan** | cc | Gary Bahler/COR/NYO/US/footlocker@flnet, Laurie Petrucci/COR/NYO/US/footlocker@flnet |
| 10/08/2009 02:53:31 PM | Subject | URGENT - Osberg v. Foot Locker Retirement Plan |

Please read the attached.

FL-OSB 019967