```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 2 2 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEOFFREY OSBERG, on behalf of himself
and on behalf of all others similarly situated,

                    Plaintiff,                  07-cv-1358 (KBF)

              -v-                        ORDER

FOOT LOCKER, INC. et al.,

                    Defendants.
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge

    This lawsuit, commenced in 2007, alleges that certain changes Foot Locker, Inc. ("Foot Locker") made to its employee pension plan (referred to as the "Foot Locker Retirement Plan" or the "Plan"), violated various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff alleges that Foot Locker breached its fiduciary duty in making materially false and misleading statements and omissions under § 404(a), 29 U.S.C. § 1104(a).[1] Plaintiff seeks relief pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), for reformation and surcharge.

    In particular, plaintiff contends that for the years prior to January 1, 1996, the Foot Locker Retirement Plan was a "'career average pay' plan that calculated

---

[1] This Court had previously dismissed plaintiff's claim under ERISA § 102(a), 29 U.S.C. § 1022(a), as time-barred. That determination was challenged on appeal. The Second Circuit found that since the relief plaintiff sought under § 102(a) and § 404(a) was the same, it need not conclusively decide whether the § 102(a) claim was time-barred. Osberg v. Foot Locker, Inc., 555 F. App'x 77, 80 (2d Cir. 2014).

and paid benefits according to a formula that based accruals on a specified percentage of employees' annual compensation." (Amended Complaint, ECF No. 57 ¶ 19 ("Am. Compl.").)  By means of a plan amendment adopted in late 1995 and effective as of January 1, 1996, Foot Locker converted the Plan to a "cash balance" plan for years of service beginning on January 1, 1996, and froze accruals under the terms of the Plan as it had existed previously.  (Id. ¶ 20.)  Under the amended Plan, a hypothetical or notional account was created for each Plan participant; Foot Locker attributed to that account an amount it calculated as an "initial" or opening account balance.  (Id. ¶ 21.)  The calculation of that balance is at the heart of this dispute.

According to plaintiff, for each employee who had joined the Plan before the conversion, Foot Locker calculated the initial account balance by determining the actuarial equivalent lump sum value of previously accrued benefits based on a 9% rate of interest and a mortality table.  (Am. Compl. ¶ 24.)  A participant's notional cash balance account was, in contrast, adjusted on the first day of each calendar year by an "interest credit" of 6% per annum.  (Id. ¶ 23.)  For employees who remained active participants after the conversion to a cash balance plan, Foot Locker used a "greater of" formula under which participants were entitled to the greater of "(A) their 'frozen' benefit derived from the Plan terms as of December 31, 1995, or (B) their notional account balance calculated under the Plan's cash balance formula as of the date of retirement or separation from service."  (Id. ¶ 25.) According to plaintiff, Foot Locker's decision to use the 9% interest rate to establish

opening account balances, combined with an annual 6% interest rate to calculate credits and a "greater of" formula, resulted in a period of time during which employees' frozen benefits were guaranteed to be greater than their notional account balances. (See e.g., id. ¶¶ 37-38.) Thus, the cash balance conversion had the "effect of an interest arbitrage." (Id. ¶ 45.)

There is one named plaintiff in this action, Geoffrey T. Osberg ("Osberg"). Osberg was employed by Foot Locker or one of its predecessor companies from 1982 to 2002. (Am. Compl. ¶ 5.) Osberg participated in the Plan during the entire twenty-year period of his employment. (Id.) He seeks to represent a putative class of approximately 16,000 individuals, defined as follows:

> All persons who were participants in the Foot Locker Retirement Plan as of December 31, 1995, who had at least one Hour of Service on or after January 1, 1996 (as defined under the Plan), and who were either paid a benefit from the Plan after December 31, 1995 or are still entitled to a benefit from the Plan; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

(See Am. Compl. ¶ 10; Mot. for Class Certification and Appointment of Class Counsel, ECF No. 158, at 14.)

Pending before this Court are plaintiff's motions for class certification and reinstatement of Count III, a claim pursuant to § 102(a). For the reasons set forth below, plaintiff's motions are GRANTED.

I.   LEGAL STANDARDS FOR CLASS CERTIFICATION

A plaintiff seeking certification of a class must prove by a preponderance of the evidence that its proposed class meets the requirements of Rule 23(a) and, if those requirements are met, that the class is maintainable under at least one of the

subdivisions of Rule 23(b).  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008).  Plaintiff here seeks certification under Rule 23(b)(3).

> Rule 23(a) provides that class certification may be appropriate if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) allows certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of demonstrating affirmative compliance with the requirements of Rule 23.  Wal-Mart, 131 S. Ct. at 2551.  In making a determination as to whether class certification is appropriate, the district court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Teamsters Local 445, 546 F.3d at 204 (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)) (internal quotation marks omitted).

By virtue of the rather lengthy passage of time since this case was commenced, plaintiff's motions for class certification and reinstatement of Count III

4

(surcharge) follow the guidance provided by the Supreme Court in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866 (2011) (<u>Amara III</u>). <u>Amara</u> bears similarities to the case before this Court.

<u>Amara</u> was also a putative class action challenging an employer's conversion from a defined benefit plan to a cash balance plan. 131 S. Ct. at 1870. The district court certified a class and held a bench trial after which it reformed the contract and imposed a surcharge. <u>See id.</u> at 1870-71. The issue before the Supreme Court concerned the form and basis for relief. The Court held that reformation and surcharge were both appropriate equitable remedies pursuant to § 502(a)(3). <u>See id.</u> at 1878-80.

Neither the class certification motion nor the request to reinstate the § 102(a) claim present difficult issues, particularly in light of <u>Amara</u>.

II.  CLASS CERTIFICATION

    A.  <u>Numerosity</u>

Numerosity is not an issue on this motion—defendants concede it and the proposed class consists of approximately 16,000 members. (Answer § 12; <u>see also</u> Expert Report of Lawrence Deutsch, ECF No. 84-23, at 1.)

    B.  <u>Commonality and Predominance</u>

Commonality is a contested issue, but it is quickly resolved in plaintiff's favor. Commonality requires a showing, through the existence of at least one "question[] of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), that the representative's claims and those of the class "depend upon a common contention"

which is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551. A court's analysis of commonality and predominance often merge, Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 73 n.12 (S.D.N.Y. 2006), and they do so here.

There are multiple common questions of law and fact in this case that will generate class-wide answers—and these common questions predominate over potentially unique issues. Among the common questions are:

> Whether Foot Locker violated ERISA's strict fiduciary standards by preparing and disseminating participant communications with the intent to conceal the wear-away and/or that had the effect of concealing wear-away.
>
> Whether there was a binding understanding of a no-freeze plan—that is, that the amended plan provided for an equal-value conversion from an annuity to an account balance format, with new benefits being added immediately, equal to the annual pay and interest credits posted to participants accounts, effective January 1, 1996—coupled with participants' objective, reasonable (but mistaken) expectation that that was what the formal plan terms provided.
>
> Whether Foot Locker violated its fiduciary duties by intentionally taking advantage of employees' lack of full and accurate information from the Company regarding the conversion to obtain employees' services without actually providing them with the benefits Foot Locker told them they were earning in exchange for those services.

There is nothing "individualized" about any of these questions. Regardless of whether the answer to each of these inquiries is affirmative or negative, the answer is identical as to each member of the class. Because "th[e] determination of [the] truth or falsity [of any of these questions] will resolve an issue that is central to the

validity of [the class'] claims in one stroke," see Wal-Mart, 131 S. Ct. at 2551, commonality is satisfied.

C.    Typicality

Typicality is also satisfied. Each class member's claim arises from the same course of events and is subject to the same proof—the changes in the Plan, planning for those changes by defendants, and communications about those changes. Defendants argue that individual issues will predominate as each class member may or may not be adversely affected by the changes in the Plan. However, based on the evidence before the Court on this motion (which may or may not alter before trial), the evidence is to the contrary: that any employee subject to the combination of the 9% discount rate used to calculate the initial account balance, and the 6% rate used to calculate additional accrual, would arguably experience a period of "wear-away" when he or she would not earn additional benefits. In this regard, for some period of time, the harm is common. (Notably, defendants have not offered a period of time when this calculation would change and work against a putative class member).

D.    Adequacy

There is no reason to doubt that Osberg "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). He has the identical legal and effectively identical financial interest in this action as do the members of the proposed class. The fact that putative class members stand to benefit by potentially

different amounts if successful in this action does not give rise to a conflict. See In re NASDAQ Mkt.-Makers Antitrust Litig., 169 F.R.D. 493, 513 (S.D.N.Y. 1996).

E. Reliance

Defendants contest class certification largely on the basis that individual issues of reliance will predominate over common ones. This assertion is premised on the view that putative class members must show individual reliance on misrepresentations or omissions to establish a § 404(a) violation or entitlement to the remedy of reformation or surcharge. This view is incorrect and has largely been foreclosed by Amara.

As an initial matter, plaintiff's claim here is that the breach of fiduciary duty (the § 404(a) claim) is evidenced by a course of common conduct—in which defendants acted in a uniform manner across the class. Plaintiff points to common materials, sent to all class members, as at the core of the alleged breach. Liability or non-liability as to a § 404(a) claim reasonably could be based on a factfinder's assessment of these common, class-wide communications. Indeed, there is no evidence before the Court that any particular plaintiff received materially individualized materials which would suggest a weakness in plaintiff's form of proof.

Given this undifferentiated set of class-wide communications, plaintiff is correct that reliance may be presumed. The fact pattern is more analogous to that in Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004), and In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108 (2d Cir. 2013), cert. denied, 134 S. Ct. 1938 (2014).

8

In both of those cases, the plaintiffs were in notably disadvantaged positions and were unlikely themselves to discover the "truth" (in U.S. Foodservice, the inflated invoices, in Klay, the reduced physician reimbursements). Here, putative class members were in a similarly disadvantaged position: in a highly technical area of notional cash balance calculations, employees were unlikely to understand what the posited "discount rate" meant, and what impact a subsequent interest rate would have on their benefits. Put another way, "arbitrage" between the rates was a likely scenario in the interest-rate environment. Thus, at the liability stage, reliance does not present such unique issues as to require denial of certification.

Individual questions also do not predominate at the remedy phase. In the remedy phase, reliance is not required. In Amara, the Supreme Court stated that "there is no general principle that 'detrimental reliance' must be proved before a remedy decreed." Amara, 131 S. Ct. at 1881. Indeed, "[t]o the extent any such requirement arises, it is because the specific remedy being contemplated imposes such a requirement." Id.

While the Supreme Court found that reliance must be shown for estoppel claims, id., the same is not true with respect to reformation of contract or imposition of surcharge following reformation—the two forms of relief sought here. In particular, a surcharge claim based on a failure to provide proper summary information may injure an employee even in the absence of direct reliance. Id. Accordingly, in Amara, the Court found that to obtain relief by surcharge following reformation of contract required only a showing of harm and causation—not

9

reliance. <u>Id.</u> Here, plaintiff has proffered evidence that putative class members were exposed to materially identical employee communications regarding the Plan changes at issue.

F. <u>The Statute of Limitations</u>

Defendants also argue that individual questions will arise with regard to the statute of limitations. There are two potentially applicable statutes: a three-year period for those who may have had actual notice of a breach, and a six-year period for those who did not.

It bears repeating that plaintiff's liability claim is premised on a violation of § 404(a)—a breach of fiduciary duty based upon false and misleading statements or omissions. There is no doubt that the law provides that any action for breach of fiduciary duty must be brought no later than six years from the date of the breach, or, if a plaintiff has actual knowledge, three years from such knowledge. The question with regard to class certification is whether a particular putative class member may have his or her own facts with regard to knowledge—thereby causing unique questions to predominate over common ones.

According to defendants, there are thus at least two different possibilities for any given putative class member: that he or she had actual knowledge of a claim for breach, and thus his or her claim should have been brought sooner (that is, within three years of such knowledge)—or, that he or she did not.

Defendants argue that, in addition, a putative class member must bring suit within six years from the time that he or she discovers, or with reasonable diligence

could have discovered, the fraud. Thus, defendants argue that they are entitled to know when each individual putative class member knew or should have known about his or her claim, and, based on such knowledge, defend against a particular claim as untimely. According to defendants, a putative class member who received a payment from the Plan more than six years prior to the time that plaintiff brought suit, knew or should have known of defendants' alleged breach then.

Defendants' arguments sweep too far.

As an initial matter, a claim for fraud or concealment under § 413 is not equivalent to a state law fraud claim. "It is well settled that fraud and concealment are distinct concepts with respect to 29 U.S.C. § 1113 [ERISA § 413]. That is, a trustee's conduct does not have to constitute <u>fraudulent</u> concealment under ERISA in order to trigger the six-year statute of limitations." Katzenberg v. Lazzari, 406 F. App'x. 559, 562 (2d Cir. 2011) (emphasis added). In fact, if a fiduciary "knowingly misrepresented" the value of the Plan, that conduct would fall within § 1113. <u>Id.</u> The question, in short, is whether the statute runs or could run based upon a plaintiff's knowledge, versus a fiduciary's act. The answer is that the former is so unlikely (based on the nature of the alleged conduct) that it should not long detain us.

For those who did not receive a payment more than six years prior to the initiation of this suit, plaintiff's claims are suited to class treatment: plaintiff alleges that the fiduciary's concealment was experienced in a common way as it was in the form of common, class-wide documents disseminated to all and sundry.

11

However, receiving a distribution does not trigger actual or even constructive knowledge. The information available to putative class members, even those who had received distributions, was sparse and required deep knowledge of or familiarity with pension calculations and possibly ERISA to properly evaluate. The same is true, and for the same reasons, with respect to a broader claim as to a three-year "actual knowledge" standard as to a participant's claim.

Accordingly, this Court certifies the following class:

"All persons who were participants in the Foot Locker Retirement Plan as of December 31, 1995, who had at least one Hour of Service on or after January 1, 1996 (as defined under the Plan), and who were not paid a benefit from the Plan before or are still entitled to a benefit from the Plan; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order."

III. REINSTATING THE § 102(a) CLAIM

Plaintiff seeks reinstatement of his claim pursuant to § 102(a)—referring to it as the "surcharge" claim.[2] This Court previously dismissed the § 102(a) claim as time-barred. The Department of Labor ("DOL") submitted an amicus brief to the Second Circuit in which it argued that plaintiff's § 102(a) claim should not have been deemed time-barred given the sparse facts and particularized knowledge a layperson would have had to have brought to those facts. On appeal, the Second

---

[2] This is perhaps slightly misleading as "surcharge" may be a remedy imposed in connection with contract reformation. See Osberg, 555 F. App'x at 81.

12

Circuit declined to determine whether the § 102(a) claim was time-barred in light of the fact that plaintiff's § 404(a) claim would have provided for complete relief. Plaintiff now seeks to reinstate his § 102(a) claim.

Defendants argue that this motion is procedurally improper—that it is in the nature of a motion for reconsideration of a decision issued some two years ago. (See Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Reinstatement of Count Three (SPD Claim), ECF No. 169, at 1.) This argument ignores the fact that the Second Circuit itself signaled that plaintiff could—at some even later stage, perhaps if surcharge following reformation were denied in connection with the § 404(a) claim—move for reinstatement of the § 102(a) claim. See Osberg, 555 F. App'x at 81. It would certainly appear that the Second Circuit was not troubled by the timing of such a motion and was not suggesting that local rules regarding motions for reconsideration should deter this Court from considering such a motion. Of course, during the pendency of any case, a court may review its prior rulings to prevent injustice.

Here, based on the facts presently before this Court, the Court finds that its prior ruling regarding the timeliness of the § 102(a) claim was error and reverses itself. While the evidence to which the Court cited no doubt existed, the Court was imposing on laypersons an obligation to study isolated pieces of information and to understand nuances of ERISA law. The point of many rules regarding summary plan descriptions and other communications to participants is that they are supposed to be comprehensible to mere mortals. Plaintiff alleges that the

communications here were not. He has therefore sufficiently supported his claim that even receiving a distribution would not itself constitute "actual knowledge" in any real sense.

Accordingly, the Court reverses its prior ruling dismissing the § 102(a) claim.

IV. CONCLUSION

For the reasons set forth above, plaintiff's motions for class certification and reinstatement are GRANTED. The Clerk of Court is directed to terminate the motions at ECF Nos. 157 and 160.

SO ORDERED.

Dated:   New York, New York
         September 22, 2014

_____
KATHERINE B. FORREST
United States District Judge