USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 7 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

GEOFFREY OSBERG, on behalf of himself            :
and on behalf of all others similarly situated,  :
                                                 :
                            Plaintiff,           :              07-cv-1358 (KBF)
                                                 :
            -v-                                  :            OPINION & ORDER
                                                 :
FOOT LOCKER, INC. et al.,                        :
                                                 :
                            Defendants.          :
                                                 :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On September 24, 2014, this Court certified a class in the above captioned ERISA action. (ECF No. 186.) After further briefing, including submission of materials to the Second Circuit in connection with a petition for review under Rule 23(f), this Court notified the parties that it would reconsider its prior decision – but in doing so, it was not suggesting that it would necessarily alter its initial determination. (ECF No. 211.) In addition, plaintiffs have separately moved for this Court to amend its class certification ruling to include Count Three, the § 102 "Summary Plan Description" claim, in such certification. The instant Opinion resolves both of these issues in plaintiff's favor.

I.      THE ISSUES

Defendant makes two main arguments as to why the Court erroneously determined that common issues predominate: (1) proof of reliance (which it asserts is a necessary element of plaintiffs' claims based on misrepresentations) necessarily

requires individualized inquiries and is not amenable to generalized proof; and (2) questions regarding whether each plaintiff's claim is within the statute of limitations also requires individual inquiry. After studying these questions again, reading any even potentially relevant case law in this area, and examining the record on this motion, the Court confirms its prior decision for all of the reasons set forth in its Opinion from September 24, 2014 as well as for the additional reasons set forth below.

II.    PLAINTIFF'S CLAIMS

While plaintiff Osberg initially asserted four claims, at this time only two claims remain: Count Three, alleging violations of ERISA § 102(a), and Count Four, alleging violations of § 404(a). These counts seek plan reformation on the basis that defendant made false and material misstatements and omissions in its adoption of the 1995 pension plan amendment (effective as of January 1, 1996) in violation of §§102, 204(h) and 404(a).[1] Plan reformation is, as the Supreme Court found in CIGNA v. Amara, 131 S.Ct. 1866, 1879-80 (2011), essentially an equitable remedy.

Defendant asserts that for claims based on a misrepresentation, plaintiffs must prove individualized reliance. Plaintiffs argue that reliance is not a required element of either claim. This Court previously found, based, inter alia, on Amara, that detrimental reliance is not required in the context of a plan reformation claim. 131 S.Ct. at 1881 ("a showing of detrimental reliance...is not [a] necessary element

---

[1] In recent motion practice before this Court, it was found that plaintiffs may properly pursue equitable as well as legal remedies. Plaintiffs have stated that they do not seek the imposition of a "surcharge" as remedial relief. (Transcript of Conference on September 24, 2014, ECF No. 188, 12:13 – 14:20.)

2

of an ERISA plan reformation claim.")  However, the propriety of class certification

does not depend on that determination alone.  Even if reliance is required, class

certification on the facts before this Court is entirely supportable as reliance can be

demonstrated on a generalized basis.  Further, to the extent plaintiffs' claim relates

to omissions, the law is clear that a demonstration of reliance is not required.  This

Court has also previously found, and does not here revisit, that there are no

material differences in communications on which the alleged misrepresentations

and omissions are based.

III.    PREDOMINANCE

        The Court has previously found that the elements of Rule 23(a) have been

satisfied by a preponderance of the evidence.  It does not appear that defendants

have serious concerns with the Court's determination as to any issues other than

predominance; they have framed their concerns in terms of the standards governing

predominance.[2]

        Predominance tests whether the proposed class is sufficiently cohesive to

warrant adjudication by representation.  Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 623 (1997); Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) ("The

requirement's purpose is to ensure that the class will be certified only when it would

achieve economies of time, effort, and expense, and promote uniformity of decision

as to persons similarly situated, without sacrificing procedural fairness or bringing

---

[2] Inclusion of the § 102 SPD Claim does not alter any of the Court's determinations with regards to the Rule 23 factors: the plaintiff group is the same, the questions are common, and typicality and adequacy are clear.  The Court discusses predominance infra.

about other undesirable results.") (alteration, citations, and internal quotation marks omitted).

Whether the required elements of a claim may be demonstrated through generalized proof is the sine qua non of predominance. "Economies of time, effort and expense in fully resolving each plaintiff's claims will only be served, and the predominance requirement satisfied, if the plaintiffs can show that" the question at issue can be "answered with respect to the members of the class as a whole through generalized proof and that those common issues are more substantial than individualized ones." Myers, at 549 (alteration, citations, and internal quotation marks omitted); see also UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these issues are more substantial than the issues subject only to individualized proof.")

That there may be some individualized issues does not necessarily defeat predominance—it is a question of the balance. See Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc., 277 F.R.D. 97, 110–19 (S.D.N.Y. 2011); In re NYSE Specialists Secs. Litig., 260 F.R.D. 55, 74–77 (S.D.N.Y. 2009).

A.    Reliance

Misrepresentation claims do not always require individualized proof of reliance. Defendant's assertion to the contrary simply ignores Second Circuit case

4

law. It is useful to discuss – in the order in which they were decided – a number of cases in this Circuit addressing the issue.

In 2002, the Second Circuit decided <u>Moore v. Painewebber, Inc.</u>, 306 F.3d 1247 (2d Cir. 2002). The Court affirmed a denial of class certification on the basis that while there was evidence of uniform misrepresentations made to the proposed class, there was insufficient evidence that proposed class members had in fact received the materials containing the misrepresentations. Far from finding that misrepresentation claims could not be amenable to class certification, the Court instead explicitly held that class certification of fraud claims based on misrepresentations may be appropriate where those misrepresentations are materially uniform. <u>Id.</u> at 1249. In such cases, misrepresentations may be demonstrated using generalized rather than individualized proof. <u>Id.</u> The Court did not specifically address the difference between proof of the misrepresentation on a generalized basis versus proof of reliance. However, implicit in the Court's discussion is that when there is uniformity of misrepresentation, reliance may similarly be amenable to generalized proof. The Court's concern there was primarily focused on whether plaintiffs could prove receipt of the misrepresentations through generalized proof. <u>Id.</u> at 1253, 1255.

In <u>Moore</u>, the Court acknowledged that the Third Circuit had, at that time, considered the issue in the greatest depth. <u>Id.</u> at 1254. In cases before that Circuit, the outcomes of class certification motions had varied in misrepresentation cases depending upon the extent and nature of the evidence regarding uniformity in

5

misrepresentations.  Id. at 1254-55.  In Moore, the Second Circuit determined that the "district court did not abuse its discretion" in denying certification as proof of receipt was inadequate.  Id. at 1255.  It is reasonable to extrapolate that had the evidence of receipt been present, there may have been sufficient generalized circumstantial evidence of reliance for purposes of class certification.  At least, that possibility was not foreclosed.  (Otherwise, the decision would make little sense.)

In the case before this Court, plaintiffs have proffered extensive evidence that all class members were exposed to the uniform misrepresentations in a similar manner: through presentations, and mandatory and statutorily required distribution of the materials containing the misrepresentations.  Thus, receipt of the materials containing the alleged misrepresentations is here not an issue.

In 2006, the Second Circuit decided In re Initial Public Offerings Securities Litigation, 471 F.3d 24 (2d Cir. 2006).  In that case, the Second Circuit reviewed and affirmed a district court's refusal to certify a class on the basis that common questions predominated because (inter alia) there was insufficient evidence of plaintiffs' reliance on alleged misrepresentations.  Id. at 42-43.  In that case, plaintiffs recognized that reliance was an element of their claim, but asserted that they should be entitled to the rebuttable presumption of reliance set forth in Basic v. Levinson, 485 U.S. 224, 245-47 (1988). The Second Circuit disagreed.  The Court stated that there was no factual basis to assert that an IPO market operated efficiently – and that presumed efficiency was at the core of the Basic presumption.

6

Id. Plaintiffs had not asserted another basis for proving reliance on a class-wide basis.

In the case before this Court, plaintiffs are not relying on a presumption unrelated to their particular facts. Instead, what they are asserting is more appropriately characterized as reliance upon generalized and common circumstantial evidence based on common facts as to misrepresentations and their method of dissemination and receipt. The IPO case is, simply put, unhelpful to the analysis of whether reliance here can be demonstrated on a class-wide basis.

The next case of note on this issue in the Second Circuit is McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 22-226 (2d Cir. 2008). Defendant here relies heavily on this case. McLaughlin contains an extended discussion of when reliance may and may not be amenable to generalized proof. The case concerned plaintiffs (a group of smokers) who alleged they had been harmed by false advertising of cigarettes. Id. at 220. They alleged that, based on false representations, they had been led to believe that defendants' cigarettes, "Lights", were healthier than full-flavored cigarettes. Id. Plaintiffs sought $800 billion in economic damages stemming from their purchases of Lights. Id. at 221. The district court certified a class of Lights smokers. Id. The Second Circuit reversed.

The Second Circuit found that to demonstrate causation, plaintiffs had to demonstrate reliance on defendants' alleged statements regarding Lights. Id. at 222. The district court had found that defendants had engaged in a national advertising campaign which had asserted that Lights were healthier than full-

flavored brands, and that the campaign had been conducted in a uniform manner. Id. at 223. Plaintiffs sought to defend the district court's certification with reference to Second Circuit's decision in Moore. Id. The Second Circuit in McLaughlin recognized that Moore had not directly addressed reliance – but instead had addressed whether the fact of a misrepresentation could be proven in a generalized manner. Id. The Court stated that "reliance on the misrepresentation, cannot be the subject of generalized proof. Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative", and referred to taste or style differences. Id.

The Court in McLaughlin explicitly stated, "We need not go so far as to adopt the Fifth Circuit's blanket rule that a 'fraud class action cannot be certified when individual reliance will be an issue.'" Id. at 224 (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996). The Court also quoted from the Advisory Committee Notes to Rule 23(b) which state, in part, "'[A] fraud perpetrated on numerous persons by use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.'" Id. at 225. The Court rejected plaintiffs' argument that there should be a presumption of reliance based on the market shift of brand preferences from non-filtered to filtered cigarettes that they claim was due to defendants' campaign with regard to Lights. Id.

8

Importantly, in footnote 7, the Second Circuit differentiated between the type of personal preference factors that might impact whether a plaintiff relied on misrepresentations for a consumer good versus misrepresentations in connection with a financial transaction; "a financial transaction does not usually implicate the same type or degree of personal idiosyncratic choice as does a consumer purchase." Id. at n.7. The Court then found that this was the distinguishing factor between its outcome and the Eleventh Circuit's decision in Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004). In Klay, plaintiffs had entered into contracts with defendants and that it did not strain credulity to conclude that in so doing, plaintiffs relied upon defendants' representations and assumed that they would be paid the amounts due. McLaughlin, 522 F.3d at n.7. The Second Circuit drew from this the following: "assuming that most individuals are led to believe that they will get paid when they sign a contract calling for payment is very different from assuming that most individuals purchase a consumer good in reliance upon an inference that they draw from its marketing and branding rather than for some other reason." Id.

The case before this Court is precisely that called out in footnote 7 of McLaughlin: a financial transaction in which it does not strain credulity to assume that plaintiffs believed what they were allegedly told about the change in pension plans, as well as the type of situation envisioned by the Advisory Committee Notes. McLaughlin does not – as it explicitly states – present a hard and fast rule that in all cases of misrepresentation, reliance must be shown on an individualized basis.

9

As the Second Circuit noted there, and the Court acknowledges here, it all depends on the particular case.

In 2013 the Second Circuit again addressed circumstances in which reliance may be demonstrated on a generalized basis. In re U.S. Foodservice Inc. v. Pricing Litigation, 729 F.3d 108 (2d Cir. 2013). In that case, U.S. Foodservice Inc. ("USF") was a nationwide food distributor. Id. at 112. It sold its food products to customers based on cost-plus contractual arrangements. Id. That is, it would add a percentage mark-up to its cost of acquisition. Id. One method of determining USF cost of acquisition was based on its own "invoice cost". Id. Plaintiffs alleged that USF had engaged in a scheme in which it artificially inflated the cost component of its contracts. Id. at 113. Plaintiffs alleged that USF's fraudulent practices were implemented as to all cost-plus customers. While customers would receive bills from USF, the invoices were general requests for payment and did not reveal the fraud. Id. The district court found evidence that defendant took steps to conceal the fraud from its customers. Id. at 114.

The Second Circuit affirmed the district court's certification of a class on the basis that "plaintiffs had demonstrated, and USF had failed to rebut, that the relevant issues were susceptible to generalized proof such that individualized questions would not predominate and render the class unmanageable." Id. at 116. The Court noted a district court's determination of the Rule 23 factors requires resolution of factual issues by a preponderance of the evidence, a burden born by the plaintiff. Id. at 117. The Second Circuit noted, "We have previously observed

10

that fraud claims based on uniform misrepresentations to all members of a class 'are appropriate subjects for class certification' because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create 'no need for a series of mini-trials.'" Id. at 118 (citing Moore, 306 F.3d at 1253.)  The Court further found that the allegations in the case before it were most analogous to those in Klay v. Humana.

USF argued that customer reliance on inflated invoices could only be proven by individualized inquiry into the circumstances of each of its 75,000 customers.  Id. at 119.  The Second Circuit disagreed.  While acknowledging its prior decision in McLaughlin, the Court nevertheless found that payment of inflated invoices could constitute circumstantial evidence of reliance on the accuracy of the invoice.  Id. at 120.  Notably, the Second Circuit found that USF had made an argument as to reliance – but did not have proof in the record supportive of that argument.  Id. at 121.

So too in the case before this Court.  First, this case concerns a change in pension plans resulting in lower payments to class members; such changes were allegedly effected through misrepresentations.  As in In re U.S. Foodservice Inc, the fact that plaintiffs switched plans, and may have even received payment without complaint, may be circumstantial proof of plaintiffs' reliance on the truth of the alleged misrepresentations.  Put differently, no reasonable juror would assume that a person knowingly receiving a pension benefit lower than that to which they are otherwise entitled would simply ignore that fact.  Also, in this case, defendant has

argued that reliance may be an individualized inquiry, but has proffered not a shred of evidence in that regard. For instance, defendant has failed to proffer a declaration from a single class member who acknowledges that they did not rely on the materials provided to them regarding the pension plan amendment. Nor has defendant proffered any evidence that seriously undermines any of plaintiffs' uniformity of misrepresentation or assertions as to receipt. Accordingly, the law does not provide that reliance cannot be demonstrated on a generalized basis; and as a matter of fact, defendant has failed to rebut the factual showing by plaintiff.

      1.    Omission

Defendant largely ignores that this case is also pled as an omissions case. Reliance is presumed in cases where material omissions are asserted. Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972); see also Titan Grp., Inc. v. Faggen, 513 F.2d 234, 239 (2d Cir. 1975) ("[I]n instances of total non-disclosure, as in Affiliated Ute, it is of course impossible to demonstrate reliance[.]"); Goodman v. Genworth Financial Wealth Management, Inc., 300 F.R.D. 90, 104 (E.D.N.Y. 2014) ("reliance is presumed when it would be impossible to prove.")

It is certainly true that the line between omission and misrepresentation can sometimes be difficult to draw – and one cannot turn every misrepresentation case into an omission case. However, plaintiffs' claim is not simply limited to words which would have changed a single misrepresentation into truth. Instead, plaintiffs' claim is also about specific information regarding the effect and duration of "wear-away" that was not disclosed to class members. This is a cognizable

12

omission. The proof of the alleged omission is – again – generalized; and reliance may be presumed. Accordingly, even if this Court were simply to have certified the class based on the omission alone, that would be enough.

B.     Statute of Limitations

Defendants argue that the statute of limitations also provides individualized defenses which defeat predominance. However, defendants have failed to proffer evidence of even a single instance in which there would a need for such an individualized inquiry. Plaintiffs' evidence is the sole evidence before this Court – and their evidence is as to a timely claim by Mr. Osberg. Defendants' argument regarding theoretical views as to the statute of limitations must fail. Lawyers seeking to defeat class certification are well aware of the process: plaintiffs bear the burden of proving each of the elements of Rule 23 by a preponderance of the evidence; the burden the shifts to the defendant to rebut that evidence. See In re U.S. Foodservice Inc. v. Pricing Litigation, 729 F.3d at 117. Plaintiffs here have carried their burden; in response, defendant has offered only argument and not a shred of proof. That is insufficient. See Koss v. Wackenhut Corp., No. 03 Civ. 7679 (SCR), 2009 WL 928087, at *11 ("Defendants' argument assumes facts not in the record; moreover, this conclusory presumption is insufficient to overcome the strong predominance of questions of law and fact that are common to class members over any individualized questions.")

Defendant's argument regarding the statute of limitations relies heavily on the Second Circuit's decision in Novella v. Westchester Co., 661 F.3d 128 (2d Cir.

13

2011).  They have misread that decision.  There, plaintiff immediately caught a miscalculation of his pension benefits when he received notice as to the rates that would be used for such calculation.  Id. at 134.  He appealed the determination of rates used and those appeals were denied.  Numerosity for purposes of class certification depended on whether other potential class members recognized an error in rate calculation within a six year period.  Defendants in that case urged the Court to adopt a bright-line rule in which a pensioner's receipt of benefits would cause the statute to run – a "first payment rule."  Id. at 144.  The Court declined on the basis that that would place an undue burden on pensioners.  Id. at 146.  Instead, based on the facts at issue (a clear rate dispute -- disclosed by the defendant and contested by plaintiffs), the Court determined that "miscalculation can be imputed to a pensioner — and the statute of limitations will start to run — when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation."  Id. at 147.

Here, the facts are far different.  First, there are well over 10,000 potential class members.  Plaintiffs here allege that far from a clear disclosure of rates used, defendant has engaged in a scheme to prevent plaintiffs from learning of their misrepresentations.  And that – in essence – even when plaintiffs receive benefits, they would have no way to know, and no reason to question at that time that they were receiving less than that to which they might be entitled.  There is no reasonable way for payment alone to arm plaintiffs with the information they would need to be on notice of their claims.  Accordingly, as the assertion that some

14

nameless plaintiff knew or should have known of a claim within an earlier time period is entirely theoretical as well as unreasonable to assume, this Court declines to find individualized issues predominate on that basis.

IV.   THE SPD CLAIM

Plaintiff seeks to extend this Court's certification of the class to include the SPD claim, which is now part of the case.  Defendant has opposed on generally similar bases as with regard to the § 404 claim.  Those are dealt with in the Court's Opinion of September 24, 2014 and are applicable to the § 102 claim, and also in the instant Opinion.  In addition, defendant argues that plan reformation for a § 102 claim requires individualized inquiry.  This is incorrect.  First, defendant's argument is again a merely theoretical one without any supporting proof.  But, second, plan reformation would require plan change(s) applicable class-wide.  To the extent defendant's argument bleeds into whether a particular plaintiff relied on the SPD, those reliance issues are dealt with elsewhere in this Opinion.

Inclusion of the SPD claim makes sense as the misrepresentations and omissions asserted in the SPD claim are the same as those at issue in the § 404 claim.  The only question for this Court would be whether individualized inquiries would somehow predominate for that claim in a way they would not for the § 404 claim.  They would not.  Indeed, Amara indisputably holds that reliance is not an element of a § 102 claim.  Amara, 131 S.Ct. at 1881-82.  Thus, the SPD claim is included in the claims as to which the class has been certified.

V.    CONCLUSION

For all of the reasons set forth above, as well as the reasons set forth in this

Court's Opinion dated September 24, 2014, the following class is certified:

> All persons who were participants in the Foot Locker Retirement Plan as of
> December 31, 1995, who had at least one Hour of Service on or after January
> 1, 1996 (as defined under the Plan), and who were either paid a benefit from
> the Plan after December 31, 1995, or are still entitled to a benefit from the
> Plan; and the beneficiaries and estates of such persons and alternate payees
> under a Qualified Domestic Relations Order.

The Clerk of Court is directed to terminate the motion at ECF No. 192.

SO ORDERED.

Dated:        New York, New York
              November 7, 2014

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge