*Osberg v. Foot Locker, Inc., et al.*, 07-cv-01358 (KBF) (S.D.N.Y.)

# Joint Pretrial Order

## July 1, 2015

# Exhibit 11H

# Declaration of Sue Hartman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GEOFFREY OSBERG                                     :
                                                    :
On behalf of himself and on                         :
behalf of all others similarly situated,            :
                                                    :   Case No.: 07 CV 1358 (KBF)
               Plaintiff,                           :
                                                    :
     - against -                                    :
                                                    :
FOOT LOCKER, INC.,                                  :
                                                    :
FOOT LOCKER RETIREMENT PLAN,                        :
                                                    :
               Defendants.                          :
-------------------------------------------------------------X

## DECLARATION OF SUE HARTMAN

I, Sue Hartman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Sue Hartman. I live in Camp Hill, Pennsylvania. I am 71 years old. I worked for Woolworth in Camp Hill from 1967 until 1996. I worked in Human Resources at Camp Hill throughout that time. I am recently retired.

2. For much of the time that I worked at Woolworth, I was a benefits person. I was a benefits clerk from 1984 through 1987 and that was a benefits coordinator from 1987 through 1996. In that role, I assisted workers at the Camp Hill and Mechanicsburg, PA distribution centers (and for a time the Phoenix, AZ facility) with their benefits, including medical, life insurance, short-term disability, and retirement. I was essentially a jack-of-all-trades when it came to benefits. During the last few years that I worked in Camp Hill, I also did some recruiting work.

3. My position was terminated in October 1996 and I received a lump sum shortly thereafter. The lump sum that I received was $31,600.11. That lump sum was equal to my account balance.

4. I had direct contact with many of the warehouse workers in Camp Hill and Mechanicsburg, of which there were hundreds. My general impression was that they were not very well educated and had a difficult time understanding technical jargon in benefits-related written materials. In particular, I remember having difficulty trying to explain to employees how the life insurance worked. The employees required clear statements of what was happening in order to truly understand things.

5. I am testifying at trial because my former co-workers and I were harmed by the changes to the Plan in 1996. I now know that we were subject to a benefit freeze beginning in 1996. I had no idea that this was happening based on communications I received from Woolworth about the pension plan. If I had no idea, certainly none of the other rank-and-file employees who worked in Camp Hill, Mechanicsburg, or Phoenix had any clue this was happening either.

6. None of the Plan communications I received told me that my benefit was going to be frozen or even that it might be frozen. I knew some of the benefits people in New York and Milwaukee but none of them told me that there was a freeze involved or anything like that that would negatively impact me and others. The communications that I and others received showed us that our benefit would grow as we continued to work for Woolworth after January 1, 1996, and that was my understanding. I expected that when I retired, my pension would be based on all my years working for the company. I completely trusted Woolworth to be upfront with me

and others about benefits. After all, I had to understand the benefits as part of my job, so I had to trust that the company was being upfront with me.

7. Based on my familiarity with the warehouse workers in the three facilities I worked with, I expect that if Woolworth had been upfront and told them that their pension benefits would be frozen or might be frozen, people would have been very upset (as would I). That is not something that people would have readily accepted. I think that would have greatly increased the chances that workers would have voted to be represented by a union at the next possible opportunity.

8. My understanding from the 1995-1996 communications that I received (which I understand were the same communications that others received) was that Woolworth was simply converting my pension from an annual age 65 benefit to an account by placing that accrued benefit directly into the account and that benefit growth under the new account-based formula would then pick up from there. My starting account was also increased because of my age and longevity because I was over 50 years old and had more than 15 years of service as of 1996. I recall not seeing anything that I needed to worry about, or that would raise concern that something bad was happening to my pension. My understanding was that I and others had an account that was our benefit and that it was going to grow, which would mean growth in our retirement benefit.

9. My understanding was that as of January 1996, the age 65 annuity was no longer relevant and went away because it was now being reflected in the account. I did not know until recently that the annuity continued to be the operative benefit for many employees.

10. Prior to 1996, I had a solid grasp on how the pension plan worked. While I didn't prepare benefit estimates myself, I often made requests to New York or Wisconsin for benefit

3

estimates on behalf of employees who came to me.  I tried my best to help employees with their questions and requests because benefits was a subject matter beyond their ken.  I was able to answer basic questions employees had based on my knowledge of how the pension plan worked.

11.     While I didn't understand the 1996 plan as well as the prior plan, I had some basic knowledge.  In June 1996, one of the employees in Camp Hill, Hank Lombardozzi, asked that I get a benefit estimate for him for purposes of his retirement planning.  So, I sent an email to someone in Milwaukee to request a benefit estimate as of June 1, 1997 and June 1, 1998.  Prior to 1996, this was a fairly routine request that I would make on behalf of Camp Hill or Mechanicsburg employees.  My email to Catherine Krause is on the third page of trial exhibit PX164.

12.     I received a response to my email the same day that said future estimates could not be calculated and that Hank would have to let HR know 3 months prior to his retirement that he was planning to retire.  I was surprised that I was being told that this calculation could not be done, as it was something that was very routine beforehand.  I did not want to go back to Hank and tell him that I could not get this information for him.

13.     The next thing I did was forward the response to Carol Kanowicz in New York saying that I (and my superior Wally Sprague) found that initial response to be "totally unacceptable."  PX164, page 2.  I told Carol that I thought Hank's request should be processed so that he could plan for his retirement.

14.     Carol Kanowicz emailed me back 5 days later refusing to do the benefit estimate I requested.  She said that "From a Human Resource standpoint, giving out information that is inaccurate and misleading may cause participants to make decisions which they otherwise would

not make.  Since these decisions would be financial in nature, you can see the harm that might be done."  PX164, page 1.

15. Personally, I thought that the estimates should have been prepared, with HR including some sort of caveat that the amounts were subject to change.  I had experience before with the pre-1996 plan where an estimate was done for someone and their ultimate benefit turned out to be less.  That wasn't an unusual occurrence.

16. Although I was disappointed with Carol's response, I went back and told Hank that his benefit estimate could not be prepared.

17. Looking back at this email exchange now and knowing what I know now about this lawsuit, it is clear to me that Carol was not being upfront.  Nothing in her response said that Hank's 12/31/95 benefit was his operative benefit and that it was already known.  Carol was pretending as if that 12/31/95 benefit didn't exist.  Carol is saying in the email that the projected benefit would be impacted by Hank's compensation, but that was not true if his frozen benefit was operative.  It appears that the company didn't want Hank and other employees to know that employees could end up working for years without earning anything more than the 12/31/95 frozen benefit.  I'm disappointed that I and Hank (and others) were misled like that.

18. As for my benefit, I understand now that I did not receive all of the account growth that I was led to believe I would be receiving in 1996 for my service.  I was working very hard in 1996 and am unhappy to find out now that I wasn't receiving full credit for the compensation credits I thought I was earning in that year.  While I may not have been harmed here to the same degree as others – such as those who worked for 7 or more years with their benefits frozen – I still feel that I should receive the credits that I was told were going into my account and growing my benefit.

5

19. Throughout the time I worked for the company, I tried my best to advocate for my co-workers who weren't schooled in benefits in order to get the materials and answers they needed. I'm disappointed and surprised to learn that the company tried to hide this benefit freeze from me and my co-workers. I am advocating for my co-workers again: I believe that they should receive the benefit growth that Woolworth was telling them they would receive in 1996 and later.

Dated: July 1, 2015

_Sue Hartman_
Sue Hartman