*Osberg v. Foot Locker, Inc., et al.*, 07-cv-01358 (KBF) (S.D.N.Y.)

# Joint Pretrial Order

## July 1, 2015

# Exhibit 11A

# Declaration of Geoffrey Osberg

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**GEOFFREY OSBERG**                                           :
                                                             :
**On behalf of himself and on**                              :
**behalf of all others similarly situated,**                 :
                                                             :   Case No.: 07 CV 1358 (KBF)
                         **Plaintiff,**                      :
                                                             :
         **- against -**                                     :
                                                             :
**FOOT LOCKER, INC.,**                                       :
                                                             :
**FOOT LOCKER RETIREMENT PLAN,**                             :
                                                             :
                         **Defendants.**                     :
-----------------------------------------------------------X

## DECLARATION OF GEOFFREY OSBERG

I, Geoffrey Osberg, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.       My name is Geoffrey Osberg.  I live in Country Club Hills, Illinois.  I am 61 years old.  I hold a bachelor of science degree in accounting from Saint Cloud State University in Saint Cloud, Minnesota.  I am the named plaintiff and sole class representative in this action, which I first brought in 2007.

2.       I worked at multiple Foot Locker stores in Illinois from November 15, 1982 until September 11, 2002.  I was promoted to store manager in 1985 and remained a store manager for the next 17 years that I worked for the company.  In my nearly 20 years of service as store manager at several Foot Locker stores, I focused on profit growth, customer service, inventory control, and applied my business administration skills, including recruiting, hiring, and training personnel.  I was also a Market Leader, serving as a communication link between my district manager and other stores within the district.  I resigned from Foot Locker at age 48 for a better opportunity at another retailer.

3.     I am currently employed at Carson's department store in Orland Park, Illinois, where I have worked since 2007 as a sales associate.  I am taking time off of work in order to testify at trial for myself but also on behalf of other former co-workers and others who worked for Foot Locker and Woolworth because I believe that what the company did to its employees here was wrong.  I am asking the Court to amend the pension plan to provide for payment of the benefits that Foot Locker promised me and other employees for our work, which is the full amount of the benefits each of us earned through December 31, 1995 under the old formula, plus the amount that Foot Locker told us we were earning under the new cash balance formula for each year of continued employment after the January 1, 1996 change in the format of the plan.

4.     I did not learn until 2006 that I had not earned any additional pension benefits after the Plan was changed on January 1, 1996, and discovered this fact only through my attorney in connection with an unrelated claim.  In 2006, I filed a lawsuit against Defendants in Illinois because I thought that Foot Locker had miscalculated the benefit I was owed based on my account balance at the time I left the company in 2002.

5.     After that lawsuit was filed, my attorney informed me that the company's lawyers had provided internal company documents showing details about how my pension benefit had been calculated in 2002.  My attorney explained to me that the internal calculation showed that the benefit I received in 2002 had not been based on my 2002 account balance at all, but was based on the benefit I had earned under the old annuity plan as of December 31, 1995 – notwithstanding the fact that I had continued to work for the company nearly 7 years after that time.  I was shocked to learn that the account balance I had been watching grow for 7 years, that Foot Locker told me represented the pension benefits I was earning, actually was meaningless

and played no role in determining my benefit.  After learning this upsetting news from my attorney, I promptly filed this lawsuit.

6.      I fully expected that throughout the time I was working for the company that my pension was growing, because that is what Foot Locker told me.  Based on the way Foot Locker described the plan changes in 1995-1996, I believed that the company had converted the benefit I had earned up through December 31, 1995 into an opening account balance and that for each year that I continued working after January 1, 1996, Foot Locker added compensation credits and interest to my new account so that the account would grow each year.  My understanding from what the company sent me was that, after the 1996 change in the plan's format, the account balance was now my pension benefit and growth in my account equated to growth in my pension benefit.

7.      My understanding was that the annuity benefit I had earned under the prior formula was no longer relevant because it had been converted into cash and deposited into my new account balance.  I never had any reason to think that the full value of my December 31, 1995 accrued benefit was not reflected in my opening account balance.  Foot Locker told us point blank that our new accounts represented the same pension benefit each of us had earned to date under the plan, just in a different, easier-to-understand format.  The possibility that my account balance might actually represent a benefit less than what I had already earned was something that never even entered my mind.

8.      During my employment with Foot Locker, I paid attention to and carefully reviewed the communications I received from Foot Locker about the retirement plan.  I understood from those communications that, before the 1996 change, the pension plan provided for an annual benefit that would be paid out beginning when I retired.  I understood that in

3

exchange for my work for the company, I earned pension benefits under a percentage formula based on my annual compensation.

9.      Before the Plan change in 1996, each year I received different statements showing my pension growing from the previous year.  One was a retirement plan statement that reported only my pension benefit, showing me how much my retirement annuity benefit had increased over the previous year.  The other type of statement showed me all the benefits that the company provided, how much those benefits cost the company, and the current amount of my retirement benefit.  After the announcement of the plan change in 1995, the company continued to send me statements that remained very similar in form and content, showing me my new account balance, how much my account had grown from the previous year, and the cost to the company of providing these benefits.

10.      I first learned that the company was going to modify the pension plan from a September 1995 letter from the CEO and the President of Woolworth Corporation.  That document is the Class's Trial Exhibit PX2.  The message I remember taking away from the letter was that I should be excited about the changes, because the company was improving the plan's retirement benefits to be more competitive with other companies and to make it easier for employees to understand the benefits we were earning.  I recall that the letter told me that I would be able to see my benefits grow by watching my account grow.  The letter also told me that I could take my benefit in a lump sum cash payment when I left the company.

11.      The next communication about the plan changes I remember receiving was the November 1995 Highlights Memo.  That document is the Class's Trial Exhibit PX4.  I understood after reading that memo that Foot Locker would be taking the retirement annuity benefit I had earned through December 31, 1995 and would convert it into an account balance.  I

understood from reading the memo that my benefit was not going to be reduced when starting

my new account balance – it was just being converted to a different form, from an annuity into

an account with the same value.  In fact, the memo says that explicitly on the last page,

promising that "Your accrued benefit as of December 31, 1995 will not be reduced as a result of

the Plan revisions."  I understood that to mean that my account balance contained the full value

of the benefit I had earned as of December 31, 1995 – that is, the benefit the plan would pay me

if I left and asked for my benefit in a cash lump sum.

12.     So, what I understood from this memo was that Foot Locker was switching me

over to the new plan by changing my annuity benefit into an account balance, that I wasn't going

to lose anything from doing that conversion, and that I would now be able to take a lump sum

payment of my new account balance.  I understood that the account balance would now be my

benefit, and that the old annuity benefit I had earned under the old formula would no longer be

relevant since it had been converted at full value into my account.  The November Memo didn't

say anything that made me think otherwise – for example, there was no indication that I should

save my final benefit statement from the retirement annuity plan because the December 31, 1995

benefit it reported might end up being the benefit I would get when I retired or left the company.

If that was a possibility, which I now understand it was (but certainly did not understand then), it

seems like an easy thing to say and Foot Locker should have told us that.  But there was nothing

like that, and instead the Memo was very clear about how the old formula was going away and

that only thing that would matter going forward was our accounts.

13.     I remember receiving and reviewing a benefit statement in late 1995 or January

1996 and another statement a few months later.  I remember these statements because they first

showed me how much the company put in my cash balance account.  The estimated statement

showed the old plan benefit on the left side and the new plan benefit on the right side.  The statement said that the account balance was the amount I would receive if I terminated employment or retired.  I took that as confirming, as the November memo had said, that the account was equal to the benefit I had earned under the old plan through the end of 1995.  It had to mean that, since the statement said the account was what I would get if I left, so the account had to include everything I had earned.

14.      I remember reading the summary plan description when I received it in late 1996 or early 1997.  I understood that the SPD was confirming that Foot Locker had opened a cash balance account for me on January 1, 1996 and put in the account an amount equal to the full value of my annuity benefit as of December 31, 1995.  I assumed at the time that 9% was what federal law and IRS rules required for purposes of establishing new cash balance accounts, as the SPD seemed to be saying and that was the only thing that made sense because I assumed Foot Locker knew what the legal requirements were.

15.      After I got my cash balance account, I was able to monitor its growth every year based on annual account statements Foot Locker sent me.  I was pleased to see that I was continuing to earn pension benefits as part of my total compensation, just as had been the case before the 1996 plan revision.  I had no reason to suspect that the year-by-year growing account meant anything other than that my benefit was growing year-after-year.  I trusted Foot Locker to honestly describe what was happening to my pension benefit.  If they were going to cut or freeze my benefits, I assumed they would tell me, and that in fact they would have to tell me – I didn't think a company could cut employees' compensation without telling them.  This was especially true since I had been a loyal long time employee with positive reviews and a good working

6

relationship with my peers and bosses.  I had no reason to think the company would do anything

underhanded to try and cut my compensation without letting me know.

16.     There were no HR or benefits meetings at my Foot Locker store to go over the

pension revisions, either in 1995-1996 when the plan changed or at any later date.  All of the

information I received about the pension while I worked at Foot Locker was from the documents

the company sent me and from other employees.  The documents I received told me that I could

call Human Resources about any questions I had about the pension, but nothing gave me the

impression that I had anything to be worried about, so I had no reason to call.

17.     When I ended my employment with Foot Locker in 2002, I received distribution

paperwork showing me that I had $20,093.78 in my cash balance account, but that I was entitled

to a lump sum payment of $25,695.96.  That distribution paperwork is the Class's Trial Exhibit

PX70.  The fact that my payment was larger than my account balance did not surprise me

because I assumed that the difference was the result of adjustments required by the IRS that

needed to be made to a cash balance account to calculate the lump sum.  The SPD described the

lump sum calculation as being based on my cash balance account and it explained on page 14

that the lump sum payment could be more than the cash balance account because there might be

an amount more than the account balance required under federal law and by the IRS.

18.     Based on what Foot Locker told me, I believed at the time that I had earned

almost $20,000 under the cash balance formula (the difference between my $6,411.67 initial

account balance and the $25,695.96 lump sum that I received from the Plan).  I have since

learned from my attorney that the 7 years of account growth I thought was adding to my pension

actually didn't increase my benefit by a penny – that the payment I received in 2002 was based

on only the annuity benefit I had earned as of December 31, 1995.

19.     When I received my lump sum payment in 2002, I had no idea that none of the credits made to my account after January 1, 1996 were included in the payment but were forfeited.  Foot Locker never told me this, and I had no way to figure it out on my own.  The payment I received made it look like I was getting my account balance, including all the growth since 1996, plus even more.  Based on the descriptions Foot Locker had been giving to me all along, and applying common sense, I don't know how I could have possibly figured out that my account actually had nothing to do with my benefit and that the growth in the account that Foot Locker told me to monitor, which I could see in the annual statements they sent, was completely meaningless.  It doesn't add up to me why Foot Locker would give me an account or send me annual "benefit statements" showing the account growing if all that growth was meaningless.  It seems obvious the company was trying to trick me and everyone else.

20.     I understand that Foot Locker' lawyer have said I should have figured out I had been tricked when I received a benefit that was about $5,000 more than my account balance.  I can assure the Court that I did not figure it out, or I would have spoken up in 2002.  The only information I was given at the time I received my lump sum in 2002 was that my lump sum was larger than my account balance and that my lump sum was "based" on my account, which as explain above was consistent with what the SPD says.  Nothing Foot Locker gave me in 2002 (or earlier) gave me reason to suspect that I had been subject to a 7-year-long benefit freeze.  I do not understand the logic of how being paid an amount greater than my account balance could have signaled to me or anyone else that are benefits had been frozen since 1996, or that we had been harmed in any way.

21.     Foot Locker never informed me that I would not earn any more pension benefits after the Plan was converted on January 1, 1996, or even that there was a risk that I might earn

nothing more for any period of time.  Foot Locker also did not inform me when they paid my lump sum that the amount I received did not include any of the compensation and interest credits that I thought were added to my benefit when I watched it "grow" from 1996-2002.

22.     Had Foot Locker told me what it was actually doing, I would have been furious and I'm sure that I would have complained.  I would have been even more furious to learn that employees hired after January 1, 1996 would immediately begin to earn new pension benefits while I and other long-serving employees were not earning any new benefits.

23.     Having served as a manager overseeing several employees at any given time, I believe that it is impossible that other Foot Locker employees would have accepted such blatant mistreatment by the company.  If I and other Foot Locker employees were told the truth about what was going on with the pension, there would have been a huge uproar, and the company would have had to rethink what they were doing.

24.     I believe that the company would have changed course in response to an employee backlash at the time.  In 1995-1996, Foot Locker stores (not just mine) were performing very well and I'm sure the company knew it could not risk upsetting the staff members of its well-performing stores.  As a store manager, I know how important employee morale is and I believe morale would have suffered if employees knew that their pensions were being frozen, especially if they knew that new employees walking in off the street would earn new pension benefits.

Dated:  July 1, 2015

_____
Geoffrey Osberg