```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEOFFREY OSBERG                              :
                                             :
On behalf of himself and on                  :
behalf of all others similarly situated,     :
                                             :   Case No.: 07 CV 1358 (KBF)
                              Plaintiff,     :
                                             :
            - against -                      :
                                             :
FOOT LOCKER, INC.,                           :
                                             :
FOOT LOCKER RETIREMENT PLAN,                 :
                                             :
                              Defendants.    :
------------------------------------------------------------ :
```

I, Lawrence Sher, depose and state pursuant to 28 U.S.C. § 1746 as follows:

1. I am a partner in October Three LLC, an actuarial and employee benefits consulting firm. I am a Fellow of the Society of Actuaries, an Enrolled Actuary, a Fellow in the Conference of Consulting Actuaries, and a member of the American Academy of Actuaries. I am the penultimate Past President of the Conference of Consulting Actuaries and continue to serve on its Board of Directors. I was a member of the Actuarial Standards Board, I have served on the Board of Directors of the American Academy of Actuaries, and I have served on both the Council of U.S. Presidents and the North American Actuarial Council. I have practiced as an actuary since 1973, primarily in the area of pension benefits. I have extensive experience designing and consulting with respect to defined benefit pension plans, including the types of plans involved in this case. Appendix 1 includes more information on my professional background, publications, and involvement in other cases.

2. The documents that I received from defendants' counsel that I considered in preparing this declaration are listed at Appendix 2. My firm is being compensated for my time at an hourly rate of $600 and for the time of other October Three employees at their regular hourly rates.

**DX12**

3. The analysis presented in this Report was prepared by me or by other October Three employees under my supervision, based on the documents listed in Appendix 2, including proposed class member data provided by defendants' counsel. The calculations were performed based on assumptions I consider to be reasonable and appropriate given the purpose of the calculations. The calculations set forth in this Report should not be used or relied upon for purposes other than as specifically addressed herein.

4. With respect to this Report, counsel for the defendants asked me to address the following issues related to the plaintiff's claims in this case: (1) background leading up to January 1, 1996 changes to the Woolworth Retirement Plan[1] (the "Plan" or the "Foot Locker Plan"), including comparisons with competitors and other companies facing financial distress, (2) how opening balances were determined under the Plan, (3) the causes and impact of the so-called "wear-away" effect in the transition from the pre-1996 benefits to the cash balance benefits, and (4) notices and other communications provided by Woolworth (referred to as Foot Locker, as successor) announcing the adoption of the cash balance benefit formula as well as ongoing Plan communications.

5. This Report contains seven major sections, an Exhibit and three appendices, as follows:

Section I   **Summary and Conclusions.** In this section I summarize my key findings and conclusions that are discussed in more depth in later sections of the Report.

Section II  **Background: Foot Locker's Objectives and Competitor Analysis.** In this section I discuss the background that led to the 1995 amendment to the pension plan and adoption of a 401(k) plan.

---

[1] In 1998, the Plan name was changed from the Woolworth Retirement Plan to the Venator Group Retirement Plan and in 2001 it was changed again to the Foot Locker Retirement Plan. A reference to the Foot Locker Retirement Plan should be read to also refer to either or both of these predecessor plans.

| | |
|---|---|
| Section III | **Background: Cash Balance Plans.** In this section I discuss the distinguishing characteristics and basic elements of a cash balance plan, including the approaches in practice to convert a traditional defined benefit plan to a cash balance plan. |
| Section IV | **Foot Locker Plan Cash Balance Benefit Formula.** In this section I discuss the key features of the Foot Locker cash balance plan, including compensation credits, interest credits and how opening balances were determined. |
| Section V | **Opening Balance Issues.** In this section, I discuss and address the plaintiff's contentions related to opening balances. |
| Section VI. | **The Wear-Away Issue.** In this section, I discuss the wear-away effect, what causes it and its impact on proposed class members, and I address the plaintiff's contentions related to the wear-away effect. |
| Section VII | **Employee Communications.** In this section, I discuss key communications at or around the time of the conversion and afterward and address the plaintiff's contentions on employee communications. |
| Exhibit A | **Impact of Interest Rate Changes: Opening Balance vs. A+B** |
| Appendix 1 | **Professional Background** |
| Appendix 2 | **Materials Reviewed** |
| Appendix 3 | **PricewaterhouseCoopers Survey** |

## I.   Summary and Conclusions

6.      Plaintiff asserts that notices and other information provided to proposed class members were misleading because they were inconsistent with the Plan's actual provisions. Most of the focus is on the determination of opening balances which plaintiff contends were understated relative to what the employees were told, thereby resulting in periods of "wear-away" (i.e., where no additional benefits would accrue) for all proposed class members. My major conclusions are as follows:

- Based on the financial difficulties faced by Foot Locker and a study of alternatives, Foot Locker's decision to convert its pension plan to a cash balance plan and adopt a 401(k) plan with a company match, was consistent with its objectives to save costs, modernize its retirement program, and provide more portability and flexibility of benefits to its employees.
- Foot Locker's new retirement program, with its associated cost savings, made the program more sustainable and competitive with those of other retailers.
- If the cash balance plan had not been adopted, it is likely that another cost savings course would have been taken, possibly even a total freeze of benefits, which was considered.
- Opening balances were determined using an interest rate higher than the 30-year Treasury bond rate in 1995, which can be justified under the circumstances considering (1) that balances were guaranteed no matter what happened to future interest rates, (2) the conclusion by Congress that corporate bonds are more appropriate than 30-year Treasury Bonds as a statutory interest rate for determining lump sum distributions in defined benefit plans, (3) historical averages of rates on long-term government and corporate bonds had been considerably higher than rates at the end of 1995, (4) the extra value provided by the above-market guaranteed 6% interest crediting rate, and (5) the significant risks and costs associated with providing lump sums.
- There are a number of individual-based factors that dictate the relationship between a participant's cash balance account and the present value of the protected accrued benefit – i.e., the extent to which there is a wear away effect, including the participant's (1) age and service on the conversion date, (2) pay level and the rates of past and future pay increases, (3) age and service at termination or retirement, (4) age and the year when benefits commence, and (5) form of distribution elected.
- Ascribing a specific wear-away period to a given participant at any point in time before he or she actually terminates and takes a distribution can itself cause misguided reliance because it implies that the period is known at the outset and is unaffected by future events.